Argued and submitted March 7, affirmed November 15, 1983

In the Matter of the Compensation of
Peter J. Russ, Claimant.

PHIL A. LIVESLEY CO. et al,
*Petitioners on Review,*

*v.*

RUSS,
*Respondent on Review.*

(WCB 80-03289, CA A22795, SC 29140)

672 P2d 337

Patric J. Doherty, Portland, argued the cause for Petitioners on Review. With him on the petition and brief were Dennis R. VavRosky and Rankin, McMurry, VavRosky and Doherty, Portland. Also on the brief in the Court of Appeals was Ronald W. Atwood, Portland.

Michael J. Hansen, Salem, argued the cause for Respondent on Review. Also on the brief was Thorbeck and Hansen, Salem.

Before Lent, C. J.**, and Peterson***, Campbell, Roberts, Carson and Jones, Justices.

CARSON, J.

---

** Chief Justice when case was argued.
*** Chief Justice when decision rendered.

## CARSON, J.

This workers' compensation case presents the question of whether an employe is entitled to benefits for injuries sustained in an unexplained on-the-job fall. We conclude that he is, provided he establishes that the fall occurred during the course of his employment and that it was not caused by idiopathic factors.[1]

The relevant historical facts are uncontested. Claimant was working at his employer's food-processing plant on February 5, 1980, when he sustained his injury. He had just completed a full eight-hour shift sorting onions on a production line. He was walking down a crowded aisle from his work station to the time-clock to punch out, when he unaccountably fell and broke his right hip. He underwent surgery and was ultimately released to return to regular work in September, 1980.

Although the cause remains unknown, the circumstances of claimant's fall are not in dispute. The area where the fall occurred was crowded but it was free from debris or any substance which could account for a slip or trip. Claimant testified that he did not get dizzy, experience vertigo, or lose consciousness prior to the fall. He was unable himself to offer a cause for the fall, however, and admitted that all he could remember of the incident was simply falling. His doctor discounted any pre-existing condition or weakness that could have caused claimant to fall[2] and employer has conceded that the fall was not idiopathic in nature. Employer and its insurer have denied liability, contending that an unexplained fall is noncompensable.[3]

Whenever compensability of an accidental injury is at issue, one question of fact to be resolved is whether the injury was one "arising out of and in the course of [the

---

[1] We use the term "idiopathic," as it is used by the Court of Appeals and Professor Larson, to mean "peculiar to the individual" and not "arising from an unknown cause." Idiopathic refers to an employe's pre-existing physical weakness or disease which contributes to the accident. 1 Larson, Workmen's Compensation Law § 12.00.

[2] Claimant had experienced episodes of vertigo in the past. However, the referee and the Court of Appeals on de novo review determined that this condition was not a factor in claimant's fall on February 5, 1980.

[3] The referee awarded compensation in this case. The Workers' Compensation Board agreed. The Court of Appeals affirmed the Board.

claimant's] employment." ORS 656.005(8)(a). The worker has the burden of proving that the injury arose out of and in the course of employment. *Ballou v. Industrial Accident Com.*, 214 Or 123, 328 P2d 137 (1958). Although this statutory definition seems to contemplate a bifurcated test, in *Rogers v. SAIF*, 289 Or 633, 639-44, 616 P2d 485 (1980), we adopted a unitary "work-connection" approach: "is the relationship between the injury and the employment sufficient that the injury should be compensable?" 289 Or at 642. We noted that this unitary test was not intended to "substantially change" existing law:

> "* * * If the injury has sufficient work relationship, then it arises out of and in the course of employment and the statute is satisfied. Existing law regarding proximity, causation, risk, economic benefit, and all other concepts which are useful in determining work relationship remain applicable." 289 Or at 643.

In *Rogers,* we quoted from Professor Larson as follows:

> "In practice, the 'course of employment' and 'arising out of employment' tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other. *Id*, § 29.00 at 5-354." 289 Or at 643, n 3.

Professor Larson further explains the unitary work-connection approach:

> "One is almost tempted to formulate a sort of quantum theory of work-connection that a certain minimum quantum of work-connection must be shown, and if the 'course' quantity is very small, but the 'arising' quantity is large, the quantum will add up to the necessary minimum, as it will also when the 'arising' quantity is very small but the 'course' quantity is relatively large. But if both the 'course' and 'arising' quantities are small, the minimum quantum will not be met." 1A Larson, Workmen's Compensation Law § 29.10 at 5-355.[4]

---

[4] Examples of cases with strong "arising" factors but weak "course" factors are where recoveries are allowed off the employment premises, outside business hours, when an employe going to or coming from work is injured by a hazard distinctly traceable to the employment, such as a traffic jam overflowing from the employment premises. Examples of the opposite situation, strong "course" elements and weak "arising" elements, are unexplained fall and other neutral-cause cases. 1A Larson, *supra*, § 29.10 at 5-355.

We now turn to the facts of the present case in light of the "course of employment" and "arising out of employment" criteria, which we now recognize as two parts of a single work-connection analysis. We first determine whether the accident occurred "in the course of employment," that is, whether the injury occurred while claimant was at work or engaged in a work-related activity. The time, place and circumstances under which the accident takes place must be considered. *Blair v. State Ind. Acc. Com.,* 133 Or 450, 454, 288 P 204 (1930). The accident here happened during working hours,[5] on the work premises, while claimant was performing a task that was required by employer for its benefit, namely, walking from his work station to the time-clock to punch out. The "course of employment" test is easily met.

We next consider the "arising out of employment" test. An employer, of course, is not liable for any and all injuries to its employes irrespective of their cause, and the fact that an employe is injured on the premises during working hours does not of itself establish a compensable injury. The employe must show a causal link between the occurrence of the injury and a risk connected with his or her employment. *Blair v. State Ind. Acc. Com., supra,* 133 Or at 455. In *Clark v. U.S. Plywood,* 288 Or 255, 260, 605 P2d 265 (1980), for example, we noted that an employe who suffers an appendicitis attack on-the-job is not entitled to workers' compensation benefits; neither is a self-inflicted on-the-job injury compensable, pursuant to ORS 656.156(1).

The question then is whether there is a sufficient causal connection between claimant's unexplained fall and his employment, such that the injury "arose" from the employment. This is truly a case of an unexplained fall because the cause of the accident cannot be directly established. Professor Larson states the problem this way:

> "All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and 'neutral'

---

[5] The course of employment is not confined to the actual manipulation of the tools of work nor to the exact hours of work. *Kowcun v. Bybee,* 182 Or 271, 186 P2d 790 (1947). Compensation lies for all activities related to the employment if it carries out the employer's purposes or advances the employer's interest directly or indirectly. *Clark v. U.S. Plywood,* 288 Or 255, 267, 605 P2d 265 (1980).

risks — i.e., risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance." 1 Larson, *supra,* § 7.00 at 3-11.[6]

■ In the present case, the Court of Appeals agreed with the findings of the Workers' Compensation Board that the medical reports and lay testimony persuasively eliminated all idiopathic factors of causation. Under the Court of Appeals' neutral risk analysis, a fall due to idiopathic causes is not compensable; neither is one where it is equally possible that its cause was idiopathic or work-related. However, a truly unexplained fall that occurs on the employer's premises, during working hours, while the employe is performing required duties is compensable if the employe can eliminate idiopathic causes. We agree.

This result is not inconsistent with the cases petitioners cite. In *Mackay v. SAIF,* 60 Or App 536, 654 P2d 1144 (1982), recovery was denied for an unexplained fall at the work place. However, the present case is distinguishable from *Mackay* because here claimant has eliminated any idiopathic causes for his fall. In *Mackay,* the court found that the claimant's evidence showed no more than that it was equally possible that the cause of her fall, her buckling knee, was idiopathic as that it was work-connected. That was not enough to satisfy her burden of proof that the cause of her fall was work-connected and, therefore, her fall was not compensable. *Mackay v. SAIF, supra,* 60 Or App at 539.

So, too, in *Puckett v. Wagner,* 6 Or App 269, 487 P2d 897 (1971), which has been cited as an "unexplained fall" case, there was evidence of idiopathic causation. The claimant in *Puckett* had been sent home early from work because he had

---

[6] Some other examples of neutral risks would be an employe, who while working, is hit by a stray bullet, bitten by a mad dog, struck by lightning, or injured by debris from a distant explosion. Another kind of neutral risk is that where the cause itself is unknown. An employe may have died on the job from unexplained causes or been attacked on the job by unknown persons, whose motives may have been personal or related to the employment. 1 Larson, *supra,* § 7.30.

been drinking. While leaving the employer's premises, he fell and was injured. The personal risk of voluntary intoxication removes *Puckett* from the neutral risk category.

Similarly, the claimant in *Raines v. Hines Lbr Co.,* 36 Or App 715, 585 P2d 721 (1978), died from a heart attack for which there were two equally plausible explanations. Decedent's employer presented medical evidence of his pre-existing arteriosclerotic heart condition and hypertension. His widow offered the explanation that he was subjected to on-the-job stress prior to his heart attack. Because the evidence could support both theories equally, the Court of Appeals held that the decedent's widow had not met her burden to prove work-connection.

*Otto v. Moak Chevrolet,* 36 Or App 149, 583 P2d 594 (1978), *rev den* 285 Or 319 (1979), was not an unexplained fall or death case. Nevertheless, petitioner cites it, so we have considered it carefully. The Court of Appeals in *Otto,* held that a claimant who was injured when she pulled up her underwear and slacks after using the toilet facilities on her employer's premises during working hours, was not entitled to compensation because the injury could have occurred at some other place. The majority in *Otto* found an insufficient causal link between the risk of the claimant's employment and her injury. *Otto* was decided before *Rogers v. SAIF, supra,* where this court recognized the full implications of a unitary work-connection analysis. In *Otto,* the "course of employment" factors were conceded; the only issue that the Court of Appeals considered was the "arising out of" element. We now recognize that while risk and causation are important factors in a work-connection analysis, they are but two of many factors, and even when risk and causation are weak, compensation is not automatically foreclosed. We note Professor Larson's warning on this subject:

> "* * * it should never be forgotten that the basic concept of compensation coverage is unitary, not dual. * * * [A]n uncompromising insistence on independent application of the two portions of the test can, in certain cases, exclude clearly work-connected injuries." 1 Larson, *supra,* § 6.10 at 3-2.

Oregon caselaw has rejected the largely obsolete "peculiar-risk" and "increased-risk" considerations which the majority in *Otto* quoted with approval from an Arizona case.

In analyzing the risk factor we now determine whether the injury had *its* origin in a risk connected with the employment or rationally and naturally incidental thereto. *Stuhr v. State Ind. Acc. Com'n,* 186 Or 629, 636-37, 208 P2d 450 (1949). In *Jordan v. Western Electric,* 1 Or App 441, 443, 463 P2d 598 (1970), the Court of Appeals phrased the issue as whether the activity was an "ordinary risk" of the employment, citing *Stuhr v. State Ind. Acc. Com'n, supra.* In *Otto,* there was no finding that the claimant presented affirmative evidence to exclude idiopathic factors as the cause of her injury. In the present case, where idiopathic causes for an unexplained fall have been eliminated, the inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employment premises exposed the employe. *Larsen v. State Ind. Acc. Com.,* 135 Or 137, 140, 295 P 195 (1931).

Petitioners contend that this result in unexplained fall cases relieves claimants of their burden of proving work-connection. We do not agree. The facts found by the referee and the Court of Appeals permit the reasonable inference that the fall was caused by the employment environment. Claimant has met his burden of eliminating idiopathic causes. There is no finding that any force or condition independent of the employment caused the fall. Claimant was engaged in the duties of his employment, on employer's premises, and exposed to the risks inherent in his work environment. In such a situation, where the "course of employment" test is so fully met, where the cause-in-fact cannot be directly established, and where claimant has met his burden of eliminating idiopathic causes, we construe the Workers' Compensation Law to allow the inference that the unexplained fall "arose out of" claimant's employment.

■ Because the "course of employment" elements are strong, because personal risks are eliminated, and because the "arising" elements are incapable of direct determination, we hold that the administrative agency and the Court of Appeals could find that claimant has carried his burden of proof and that the unitary work-connection test is sufficiently satisfied to allow compensation for this unexplained fall.

The Court of Appeals is affirmed.