Argued and submitted June 26, affirmed September 26, 2012

In the Matter of the Compensation of
Lily T. Blank, Claimant.

Lily T. BLANK,
*Petitioner,*

*v.*

US BANK OF OREGON,
*Respondent.*

Workers' Compensation Board
1000922; A149267

287 P3d 1272

Alana C. DiCicco argued the cause for petitioner. With her on the brief was Alana C. DiCicco Law.

Jerald P Keene argued the cause for respondent. With him on the brief was Oregon Workers' Compensation Institute, LLC.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

This workers' compensation case involves a claimant who fell while on her employer's premises and sustained injuries. The Workers' Compensation Board upheld employer's denial of her claim, and claimant seeks review. The issue is whether the board erred in concluding that claimant's fall was not compensable because it did not "aris[e] out of" a risk of her employment. ORS 656.005(7)(a) (a "compensable injury" is one "arising out of and in the course of employment"); *Phil A. Livesley Co. v. Russ*, 296 Or 25, 30, 672 P2d 337 (1983). We review the board's order for substantial evidence and errors of law under ORS 656.298(7) and ORS 183.482(8), and affirm.

The relevant historical facts are uncontested. Claimant works as a loan document specialist for employer. In 1997, claimant was diagnosed with Churg-Strauss Syndrome (CSS), a rare and serious medical condition that causes inflammation of the blood vessels. CSS may affect many different parts of the body in several ways and, since her diagnosis, claimant has been treated for various complaints that likely are associated with her CSS, including asthma, joint and bone pain and stiffness, lethargy, decreased hearing, vertigo, and lower-extremity numbness. Claimant also suffers from obstructive sleep apnea.

During her morning work break on February 1, 2010, claimant fell while she was alone in employer's lunchroom and sustained injuries to her head, left shoulder, right wrist, and right toe. Claimant initially returned to work but was experiencing such discomfort by the afternoon that she left to seek treatment at a hospital emergency room. She reported to hospital staff that she had tripped, although she has since not been able to recall "whether she slipped, stumbled, became dizzy or faint, or simply lost her balance." She certainly "did not lose consciousness." No employment-related hazards were identified that could have contributed to claimant's fall.

Employer's insurer denied claimant's initial workers' compensation claim. Claimant requested a hearing, and then had an Independent Medical Evaluation

(IME) by neurologist Dr. Sean Green.[1] Green opined in his IME report that the most likely cause of claimant's fall could not be identified. He also reported that, although claimant had developed some peripheral neuropathy as a result of her CSS (which causes lower-extremity numbness), those symptoms wax and wane. Green conducted the IME two months after claimant's fall and, at that time, Green reported that no evidence of postural instability, ataxia, or significant peripheral neuropathy was present. Green therefore reported that it was possible, although not probable, that claimant's CSS "could have contributed to a loss of balance and her subsequent fall."

Green later signed a concurrence letter, in which he agreed with employer's legal counsel that claimant's "medical history and the diagnosis of [CSS] clearly raises the possibility that idiopathic factors caused [claimant] to fall at work." Green agreed that several symptomatic manifestations of CSS could have caused claimant to fall, such as balance deficiencies secondary to inner-ear problems or peripheral neuropathy/lower-extremity numbness. He also agreed that, "given the totality of information available *** it is at least equally possible [that claimant's] fall was caused by problems associated with [CSS] than [with] risks associated with employment."

Green similarly testified during an August 2010 deposition that he thought it was more likely that claimant fell because of one of several idiopathic factors—including symptoms of her CSS and her sleep apnea problem—than because of a work-related risk. Green also acknowledged during his deposition, however, that because the primary symptoms of CSS are pulmonary, a neurologist would not normally treat CSS even though it does "sometimes cause neurologic symptoms." CSS, Green testified, "is uncommon enough that I don't have direct experience seeing patients with Churg-Strauss in clinic." Green further testified that many of claimant's nonneurological health complaints could be related to her CSS, but when asked to assess whether

---

[1] Claimant was also examined by Dr. Richard Sandell, an orthopedic surgeon. Sandell's report does not include any discussion of the possible causes of claimant's fall.

certain examples that he had noted were, in fact, likely related to her CSS, Green testified that "coming from a neurologist," any assessment that they were related would be a "guess."

Claimant, for her part, testified that she experiences numbness in the bottom middle part of her left foot as a result of her CSS, but also said that numbness did not cause her to fall on February 1, 2010. According to claimant, she was not feeling dizzy, faint, or unwell, or having a flare-up of any CSS symptoms before her fall. She did state that her inner-ear problems are always present.

After considering that evidence, the ALJ set aside employer's claim denial. In concluding that claimant's injury arose from her employment, the ALJ reasoned that Green's IME report corroborated claimant's testimony that a flare-up of her CSS or sleep-apnea symptoms did not cause her fall. The ALJ rejected Green's conclusions in his concurrence letter and deposition testimony—that complications of CSS or sleep apnea were at least equally as likely to have caused the fall as work factors—because those assessments, the ALJ reasoned, represented an insufficiently explained change of opinion from Green's earlier statements in his IME report. The ALJ also reasoned that Green's causal assessments carried little evidentiary weight given his lack of experience in treating CSS. The ALJ therefore determined, based largely on claimant's testimony and the IME report, that the cause for claimant's fall was truly unknown, and that claimant's fall was compensable as an "unexplained" fall.

The board reversed the ALJ's order. Unlike the ALJ, the board found "no inconsistencies" between Green's IME report and his later statements that balance deficiencies secondary to inner-ear problems, peripheral neuropathy/lower extremity numbness, and claimant's sleep apnea were all more likely to have caused claimant's fall than work-related factors. Particularly noting Green's testimony that many of claimant's CSS symptoms wax and wane and that the effects of sleep apnea are "not predictable," the board reasoned that, even in light of the IME report and claimant's testimony, those factors could not be excluded as potential causes for the fall. The board concluded that claimant's fall was not truly "unexplained," and, therefore, that the fall was

not compensable. Claimant now seeks judicial review of the board's order, challenging its determination that the claim is not compensable.

Under ORS 656.005(7)(a), "[a] 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability":

> "The Supreme Court has explained that, in order for a claim to be compensable, it must both occur *in the course of* the claimant's covered employment and *arise out of* that employment. The requirement that the injury occur in the course of employment concerns the time, place, and circumstances of the injury. The requirement that it arise out of employment requires a causal link between the injury and the employment. Those requirements are two prongs of a single work-connection inquiry. In order for the injury to be compensable, there must be some support for each prong, but neither prong is dispositive. As we concluded in *McTaggart v. Time Warner Cable*, 170 Or App 491, 494, 16 P3d 1154 (2000), *rev den*, 331 Or 633 (2001), '[t]he basic question is whether the causal connection between the injury and the employment is sufficient to warrant compensation.'"

*SAIF v. Uptegrove*, 226 Or App 45, 48, 202 P3d 264 (2009) (emphasis in original; brackets in *Uptegrove*; citations omitted). The claimant has the burden of proving that an injury is compensable and of proving the nature and extent of any resulting disability, ORS 656.266, and "must meet his or her burden by a preponderance of the medical evidence." *SAIF v. Alton*, 171 Or App 491, 497, 16 P3d 525 (2000).

The parties in this case do not dispute that claimant's injury occurred "in the course of" employment; accordingly, the only question we must address is whether claimant's fall arose out of her employment. "[A] truly unexplained fall that occurs in the course of employment arises out of the employment as a matter of law." *McTaggart v. Time Warner Cable*, 170 Or App 491, 504, 15 P3d 1154 (2000), *rev den*, 331 Or 633 (2001). Whether a fall is truly unexplained, however, is a question of fact, and a fall will be deemed "truly unexplained" only if the claimant "persuasively

eliminate[s] all idiopathic factors of causation."[2] *Phil A. Livesley Co.*, 296 Or at 30; *see also McTaggart*, 170 Or App at 503. "[T]he purpose for eliminating idiopathic causes is not to disprove other possible explanations of how the injury occurred, but, rather, to determine whether the fall—whose precise causation is by definition unknowable—arose out of the employment." *McTaggart*, 170 Or App at 504. Where it is "equally possible" that "idiopathic" factors or work-related factors caused the fall, the claim is not compensable. *Phil A. Livesley Co.*, 296 Or at 30; *Mackay v. SAIF*, 60 Or App 536, 539, 654 P2d 1144 (1982), *rev den*, 296 Or 120 (1983).

With that factual and legal background in mind, we turn to claimant's single assignment of error on review. Claimant contends that the board erred both legally and factually by relying on Green's concurrence letter and deposition testimony to deny compensability because, according to claimant, that evidence established that "[Green] was not an appropriate expert to address symptoms of [CSS]."[3] Claimant further contends that, even if Green's opinions were reliable, the board's conclusion "is based upon an obvious lack of substantial evidence," given that the board "completely disregarded the unrebutted testimony of claimant that the cause of the fall was unknown."

Despite her charge of "legal error," claimant's contentions relate only to whether evidence in the record— including Green's opinions—adequately supports the board's conclusion that claimant's fall was not truly "unexplained." Accordingly, we review the board's order for substantial evidence, meaning evidence that would permit a reasonable person to make the findings in question when considered in the context of the entire record. ORS 183.482(8)(c); *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990); *Bluemer v. Southland Industries*, 221 Or App 252, 259, 190 P3d 418 (2008). "We cannot substitute our view of the

---

[2] The term "idiopathic" in this context means "peculiar to the individual" and not "arising from an unknown cause." *Phil A. Livesley Co.*, 296 Or at 27. "Idiopathic refers to an employe's pre-existing physical weakness or disease which contributes to the accident." *Id.*

[3] Claimant particularly points to Green's testimony that CSS is "uncommon enough that I don't have direct experience seeing patients with [CSS]," and that the condition is "not ordinarily treated by a neurologist," to contend that he was not qualified to assess whether CSS was a potential factor in claimant's fall.

evidence for that of the board." *Dynea USA, Inc. v. Fairbanks,* 241 Or App 311, 318, 250 P3d 389 (2011) (citing *Garcia,* 309 Or at 295).

Given that standard of review, we reject claimant's argument that it was error for the board to rely on Green's concurrence and deposition testimony. Claimant is correct that, in deposition, Green testified that CSS is "uncommon enough that I don't have direct experience seeing patients with [CSS]" and that the condition is "not ordinarily treated by a neurologist." Green went on to explain, however, that CSS does sometimes cause neurologic symptoms like the peripheral pulmonary neuropathy and inner-ear problems with which claimant has been diagnosed, and which can cause problems with balance. Those symptoms, Green opined in both his IME report and in deposition, can wax and wane considerably over the course of weeks or months. Thus, although claimant showed no signs of a flare-up of CSS symptoms at her IME—which occurred over two months after the fall—Green opined that neither of claimant's neurologically related CSS symptoms could be ruled out as possible factors in claimant's fall. The board relied on that opinion in reaching its conclusions, and we agree that it was reasonable to do so, given Green's focus in testimony on neurologic symptoms of CSS and his explanation for why those symptoms may have been factors, even if they did not appear to be present during the IME.

We also reject claimant's contention that, even if the board could have reasonably relied on Green's opinions, substantial evidence does not support the board's conclusions. Green's causal assessments in his concurrence and deposition testimony suggested potential idiopathic causes for claimant's fall, including balance problems secondary to both the inner-ear problems and neuropathy that are symptomatic of CSS and sleep apnea. Claimant testified that her inner-ear problems and numbness in her left foot are always present, and presented no evidence, medical or otherwise, that she fell as a result of work factors. The board considered Green's as well as claimant's testimony, and determined that, "although claimant could not identify the cause of her fall, the medical record raises

the possibility that idiopathic risks" contributed to it. Substantial evidence supports that result. For that reason, we uphold the board's determination that claimant failed to adequately eliminate all possible idiopathic factors, and we conclude that the board did not err in determining that claimant's fall is not compensable.

Affirmed.