Argued and submitted December 17, 2015, reversed and remanded April 6, 2016

In the Matter of the Compensation of
Walter Guill, Claimant.

Walter GUILL,
*Petitioner,*

*v.*

M. SQUARED TRANSPORTATION, INC.
*Respondent.*

Workers' Compensation Board
1304551; A157567

371 P3d 523

Spencer D. Kelly argued the cause for petitioner. With him on the briefs was Welch, Bruun & Green.

Sarah Wong argued the cause for respondent. On the brief were Howard R. Nielsen and Radler, Bohy, Replogle & Conratt, LLP.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

LAGESEN, J.

## LAGESEN, J.

Claimant petitions for review of an order of the Workers' Compensation Board in which the board, over a dissent by one member, upheld employer's denial of his claim for workers' compensation benefits. Claimant, a truck driver, suffered a syncopal episode, that is, a loss of consciousness,[1] while driving his truck. Claimant's truck crashed and, although claimant was not injured in the crash, employer required him to seek medical services for the purpose of diagnosing the cause of claimant's fainting episode. Claimant requested workers' compensation benefits for those diagnostic medical services, and employer denied the request. The board upheld employer's denial, concluding that claimant failed to demonstrate that his fainting episode arose out of his employment and, for that reason, was not compensable. For the reasons that follow, we conclude that certain factual stipulations made by the parties establish as a matter of law that claimant's syncopal episode was a "compensable injury" within the meaning of ORS 656.005(7) and that the board erred by concluding otherwise. Accordingly, we reverse and remand.

Under ORS 656.298(7) and ORS 183.482(8), we review an order of the board to determine whether the board's findings are supported by substantial evidence and whether the board has correctly interpreted and applied applicable law. *Blank v. US Bank of Oregon*, 252 Or App 553, 554, 287 P3d 1272 (2012). Here, as explained further below, the parties stipulated to the pertinent facts. As a result, our review is for legal error.

The parties stipulated to the following facts below:

- Claimant is a truck driver.

- While on the job driving his truck, claimant suffered a syncopal episode and the truck ran into highway barriers.

- The highway barriers and the truck were damaged as a result of the accident, but claimant "did not

---

[1] *See City of Eugene v. McCann*, 248 Or App 527, 530, 530 n 2, 273 P3d 348 (2012) (explaining that syncope is a loss of consciousness, *i.e.*, fainting).

have any medical services for, or sustain, any injury apart from the syncopal episode."

- Claimant "was taken off work for more than four days following the subject accident" and "required medical services to ascertain the source of the syncopal episode."

- Claimant had no prior history of syncope before the accident, and the medical services that claimant received "never ascertained the source of the episode."

- "Claimant's syncopal episode is truly unexplained."

Claimant filed a claim for workers' compensation benefits for the diagnostic medical services that he received for the syncopal episode. Employer denied the claim on the ground that it had "been unable to obtain sufficient evidence to establish that [claimant] sustained a compensable injury and/or occupational disease arising out of and in the course of employment within the meaning of Oregon's workers' compensation laws pursuant to ORS 656.005(7)."

Claimant requested a hearing. The parties stipulated to the facts listed above. The case was submitted to an administrative law judge (ALJ) on the written record, and the ALJ upheld employer's denial. Claimant then appealed the ALJ's order to the board which, as noted, upheld the denial in a split decision. The board held that claimant failed to establish that his syncopal episode was connected to his work. In so doing, it rejected claimant's argument that *Livesley v. Russ*, 296 Or 25, 30, 672 P2d 337 (1983), and other case law addressing the compensability of injuries resulting from falls with unascertainable causes, had any bearing on the analysis of whether the claim was compensable. The dissenting board member disagreed, reasoning that the parties' stipulation that claimant's on-the-job syncopal episode was "truly unexplained" established that the episode was compensable as a matter of law under the case law that the majority had concluded was inapplicable.

Claimant petitioned for judicial review. The issue on review is whether the board erred when it determined

that claimant's syncopal episode was not a "compensable injury" under Oregon's Workers' Compensation Act. We conclude that it did, agreeing largely with the analysis of the dissenting board member.

Under ORS 656.005(7)(a), "[a] 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability." Before us, the parties do not dispute that claimant's syncopal episode occurred "in the course of" claimant's employment, or that claimant's syncopal episode "require[ed] medical services" within the meaning of the statute. Rather, as we understand the issues framed by the parties, the questions before us are (1) whether claimant's syncopal episode is an "injury" within the meaning of ORS 656.005(7)(a) and (2) if so, whether that injury is one "arising out of" claimant's employment within the meaning of the statute.

As to the first question—whether claimant's syncopal episode is an "injury" within the meaning of the statute—our case law establishes that it is. As we have explained, a claimant suffers an "injury" within the meaning of ORS 656.005(7)(a) if the claimant suffers a "harm, damage or hurt" that either requires medical services or results in disability or death. *K-Mart v. Evenson*, 167 Or App 46, 50, 1 P3d 477, *rev den*, 331 Or 191 (2000); *see also Horizon Air Industries, Inc. v. Davis-Warren*, 266 Or App 388, 394-97, 337 P3d 959 (2014). A harm that requires diagnostic medical services qualifies as an "injury" for purposes of the statute. *K-Mart*, 167 Or App at 50 (citing *Finch v. Stayton Canning Co.*, 93 Or App 168, 173, 761 P2d 544 (1988)). Here, claimant experienced a harm—an unexplained loss of consciousness—that the parties stipulated required diagnostic medical services: "Claimant required medical services to ascertain the source of the syncopal episode." Accordingly, claimant's syncopal episode qualifies as an "injury" for purposes of ORS 656.005(7)(a).

The next question is whether claimant's injury is one "arising out of" claimant's employment. For the reasons that follow, we conclude that the parties' stipulation to the fact that claimant's syncopal episode is "truly unexplained"

establishes that claimant's injury is one that arose out of his employment.

Under Oregon law, whether a workplace injury is one "arising out of" the claimant's employment hinges on the type of risk that led to that injury. The Supreme Court has identified three categories of risks that lead to workplace injuries: "risks distinctly associated with employment, risks personal to the claimant, and 'neutral' risks—*i.e.*, risks having no particular employment or personal character." *Livesley*, 296 Or at 29-30 (internal quotation marks omitted); *Redman Industries, Inc. v. Lang*, 326 Or 32, 36-37, 943 P2d 208 (1997).

Pertinent to this case, where the cause of an injury cannot be determined, the injury is considered to result from a neutral risk. In fact, as the Supreme Court has told us, "unexplained injuries are a classic example of neutral risk." *Redman*, 326 Or at 37; *Livesley*, 296 Or at 30 n 6 ("Another kind of neutral risk is that where the cause itself is unknown. An employee may have died on the job from unexplained causes or been attacked on the job by unknown persons, whose motives may have been personal or related to the employment.").

If an injury occurring in the course of employment results from a risk associated with employment, then the injury is one "arising out of" employment and is compensable. *Redman*, 326 Or at 36-37; *Livesley*, 296 Or at 30. If such an injury results from a risk personal to the claimant, then the injury is not one "arising out of" employment and is not compensable. *Redman*, 326 Or at 36-37.

Under our case law, whether an injury resulting from a neutral risk is one that arises out of employment turns on whether the cause of the injury is known or unknown. Where the cause of the injury is known, an injury resulting from a neutral risk is one "arising out of" employment only "if the conditions of employment put claimant in a position to be injured" by the identifiable cause of injury. *Redman*, 326 Or at 36 (internal quotation marks omitted); *see also Panpat v. Owens-Brockaway Glass Container*, 334 Or 342, 349-50, 49 P3d 773 (2002) (discussing three categories of risks). Examples of such neutral risks include "an employee,

who while working, is hit by a stray bullet, bitten by a mad dog, struck by lightning, or injured by debris from a distant explosion." *Livesley*, 296 Or at 30 n 6.

We have applied a different test where the neutral risk at issue is an unexplained injury without an ascertainable cause. In such cases, we have not asked whether the claimant's conditions of employment put the claimant in a position to be injured. Instead, we have asked whether the claimant has "eliminate[d] idiopathic causes" for the unexplained injury. *Id.* at 30. If a claimant "persuasively eliminate[s] all idiopathic factors of causation," then the injury is deemed to be "truly unexplained." *Id.*; *Blank*, 252 Or App at 557-58; *McTaggart v. Time Warner Cable*, 170 Or App 491, 504, 16 P3d 1154 (2000), *rev den*, 331 Or 633 (2001).[2] A "truly unexplained" injury, as a matter of law, arises from the claimant's employment. *Blank*, 252 Or App at 557-58.

In this case, the parties' stipulations establish that claimant's claim for compensation is one stemming from the neutral risk of an unexplained injury. The parties have stipulated that the medical services that claimant sought "did not ascertain the source of the syncope." Thus, that injury—the cause of which cannot be ascertained—is one "arising out of" claimant's employment for purposes of ORS 656.005(7)(a) if it is "truly unexplained."

Here, it is. Whether an injury is "truly unexplained" is a question of fact. *Blank*, 252 Or App at 557-58. And, in this case, the parties have supplied the answer to that particular question of fact through their stipulations. In the parties' own words, "Claimant's syncopal episode is truly unexplained." Because claimant's syncopal episode is "truly

---

[2] If a claimant does not persuasively eliminate all idiopathic factors of causation such that it remains "equally possible" that idiopathic factors, rather than work-related factors, caused the injury, then the injury is not deemed to be "truly unexplained" and is not compensable. *Blank*, 252 Or App at 558; *see also Livesley*, 296 Or at 30; *McAdams v. SAIF*, 66 Or App 415, 674 P2d 80, *rev den*, 296 Or 638 (1984) (injuries resulting from fall precipitated by fainting spell were not "truly unexplained" where the claimant did not persuasively eliminate all idiopathic causal factors for fainting spell); *Mackay v. SAIF*, 60 Or App 536, 539, 654 P2d 1144 (1982), *rev den*, 296 Or 120 (1983) (injuries resulting from fall precipitated by buckling knee not "truly unexplained" where the claimant did not persuasively eliminate all idiopathic causal factors for knee buckling).

unexplained," it arose out of claimant's employment as a matter of law. *Id.*

In reaching a different conclusion, the board majority appears to have determined that the analytic framework established in *Livesley* does not apply in all cases involving unexplained injuries, but only in cases involving unexplained falls. It is true that our cases involving unexplained injuries in the workplace have involved injuries resulting from unexplained falls. However, we do not understand *Livesley* or any subsequent case to suggest that *Livesley's* framework applies only when the unexplained injury at issue is one resulting from an unexplained fall. On the contrary, in both *Livesley* and *Redman*, the court broadly classified unexplained *injuries*—not just injuries resulting from unexplained falls—as "a classic example of neutral risks." *Redman*, 326 Or at 37; *Livesley*, 296 Or at 30 n 6. From that, we infer that the court intended for the *Livesley* framework to govern the determination of whether an injury is one "arising out of" a claimant's employment in any case involving an injury that qualifies as a neutral risk because its cause cannot be ascertained. Said another way, under *Livesley*, a claimant may demonstrate that an injury occurring in the course of employment "arose out of" that employment by demonstrating that the cause of the injury cannot be ascertained (thus establishing that the injury resulted from a neutral risk), and that the claimant has persuasively eliminated all idiopathic causal factors (thus establishing that the injury is "truly unexplained"). Here, claimant made both showings through the parties' stipulations.

Reversed and remanded.