444 November 27, 2024 No. 848

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of
Mengesha Kelkay, Claimant.

SAIF CORPORATION
and Marquis Quality Healthcare,
*Petitioners,*

*v.*

Mengesha KELKAY,
*Respondent.*

Workers' Compensation Board
2202641; A182264

Argued and submitted October 15, 2024.

Beth Cupani argued the cause and filed the briefs for petitioners.

Spencer D. Kelly argued the cause for respondent. Also on the brief was Welch Bruun & Green.

Before Tookey, Presiding Judge, Kamins, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

## KISTLER, S. J.

Claimant fainted while waiting in line for an employer required vaccination. He fell and sustained substantial injuries, for which he sought workers' compensation benefits. The Workers' Compensation Board (board) found that claimant had rebutted various nonspeculative personal risks that might have caused him to faint. It followed, the board reasoned, that claimant's injuries resulted from a neutral risk and arose out of employment. That finding, coupled with the board's finding that claimant's injuries occurred in the course of his employment, led the board to conclude that his injuries were compensable. On judicial review, SAIF argues primarily that the neutral risk doctrine does not apply to falls that result from fainting even when the reason why the claimant fainted is unexplained. We affirm the board's order.

Before turning to SAIF's arguments, we first describe the applicable legal principles. We then set out the facts, describe the board's order, and explain why the board's order (or at least its alternative rationale) correctly applied the methodology announced in *Sheldon v. US Bank*, 364 Or 831, 441 P3d 210 (2019). Finally, we address SAIF's argument that *Sheldon*'s methodology does not apply when an employee falls after fainting for unexplained reasons.

We begin with general principles. Under Oregon's unitary "work-connection test," an injury will be compensable if it "'aris[es] out of' and occurs 'in the course of employment.'" *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997) (citing ORS 656.005(7)(a),[1] which provides in relevant part: "A 'compensable injury' is an accidental injury, *** arising out of and in the course of employment requiring medical services or resulting in disability or death."). SAIF does not dispute that claimant's injury occurred "in the course of his employment." Claimant was waiting in line for an employer required vaccine when he fainted. The issue that divides the parties is whether injuries that occur when an employee faints for unexplained reasons "arise out of employment."

---

[1] ORS 656.005 has been amended since the date of claimant's injury; however, those amendments do not affect our analysis. We accordingly cite the current version of the statute.

An injury will arise out of employment if it results either from an employment risk (a risk that is "distinctly associated with the employment") or a neutral risk (such as an "unexplained accident[t]" on the job). *Sheldon*, 364 Or at 834-35 (internal quotation marks omitted). However, an injury does not arise out of employment if it results from a personal risk—a category of risk that includes "a claimant's personal medical conditions." *Id.* A recurring issue in workers' compensation cases is whether an unexplained injury results from a neutral risk when a claimant's personal medical conditions could but may not have caused the injury.

In *Sheldon*, the Supreme Court set out a framework for analyzing that issue. *See id.* at 840-48 (clarifying *Phil A. Livesley Co. v. Russ*, 296 Or 25, 672 P2d 337 (1983)). The court explained in *Sheldon* that, when an injury (or the accident that caused it) appears to be unexplained, the initial question is whether the injury plausibly could result from a risk personal to the claimant; to use *Sheldon*'s terminology, does the record disclose a "facially nonspeculative idiopathic explanation" for the injury?[2] *Id.* at 847. The court explained that, "if there are some facially nonspeculative idiopathic causes for explaining [the injury], then the claimant must offer countering evidence sufficient to convince the board that the proposed idiopathic cause is, in fact, speculative." *Id.* If the claimant meets that burden, then the injury will result from a neutral risk. *Id.* If, however, a claimant fails to convince the board that a facially nonspeculative idiopathic explanation is, in fact, speculative, then the injury will result from a personal risk. *Id.* Finally, if no facially nonspeculative idiopathic explanations for the injury are apparent on the record, then the injury also will result from a neutral risk. *Id.*

*Sheldon*'s use of the word "facially" is significant. If a "facially nonspeculative idiopathic explanation" is apparent on the record, then that facially nonspeculative explanation frames the issue that a claimant must rebut; that is,

---

[2] *Sheldon* explained, "In this context, the word 'idiopathic' refers to an employee's preexisting physical weakness or disease that contributes to the accident." 364 Or at 833 n 1 (second set of internal quotation marks omitted). *Sheldon* thus used "idiopathic" in its secondary sense. *See Webster's Third New Int'l Dictionary* 1123 (unabridged ed 2002) (identifying the primary and secondary meanings of idiopathic).

the claimant bears the burden of production and persuasion to show that what appears to be a facially nonspeculative idiopathic explanation is, in fact, speculative. *See id.* (stating the standard that a claimant must prove).[3] The board's ruling that a claimant has (or has not) met that burden typically will turn on its factual findings and is subject to the usual standards of review. *See* ORS 656.298(7) (providing that the board's factual findings are reviewed for substantial evidence as stated in ORS 183.482); *SAIF v. Thompson*, 360 Or 155, 169, 379 P3d 494 (2016) (holding that the board permissibly explained why SAIF had not met its burden of persuasion to rebut the firefighter's presumption).

With that preface, we turn to the facts of this case. Claimant was 85 years old when he fainted while waiting in line for an employer required vaccination.[4] As a result of fainting, he fell and sustained substantial injuries. Claimant was taken to a hospital, which both sought to diagnose why he fainted and to treat the various injuries he sustained when he fell. Claimant later filed for workers' compensation benefits for the injuries he sustained when he fainted and, as a result, fell.

The record before the board discloses that, at SAIF's request, Dr. Mangum reviewed claimant's medical records and examined him. Mangum noted that claimant had fainted once before—approximately a year and a half earlier. Mangum suspected that claimant's current episode of fainting could have been caused by dehydration, possibly coupled with urinary retention. He observed that other possible causes for fainting included claimant's age, low blood pressure due to his blood pressure medications, or dizziness as a side effect of those medications. Having identified those

---

[3] The court explained why it stated the standard that way. It observed that "the very idea of proving that an event is unexplained is an awkward one." *See* 364 Or at 846. It reasoned that determining whether an event is "explained or unexplained is not a matter of determining which explanation is the best explanation or even which explanation is the likeliest explanation." *Id.* at 847. Rather, the question is whether a claimant has convinced the board that a facially nonspeculative idiopathic explanation "is, in fact, speculative." *Id.*

[4] The board's order and the medical records refer to this episode in various ways. The board refers to claimant's becoming dizzy. The medical records refer to syncope (fainting) or near syncope (almost fainting). The difference among those terms is not material in this case, and we refer to claimant "fainting."

possible causes, Mangum concluded that "the exact cause [of claimant's fainting] could not be determined within the medical records and I could not determine the cause today [based on his examination of claimant]."

Claimant's treating physician, Dr. Liu, reached a similar conclusion but offered a more detailed explanation. In seeking to determine whether claimant's personal medical conditions had caused him to faint, Liu initially quoted a "syncope workup" that the hospitalist had done the day claimant was treated for his injuries. The hospitalist's notes, which Liu quoted, state:

> "For syncope: no further syncope here [in hospital] and syncope workup which included ekg, tte, ct head were negative for acute findings. I [s]uspect etiology of syncope may have been postural-related or dehydration related. He received iv fluids. Noted that he presented with elevated troponin peaked 0.23—> 0.12 felt due to demand ischemia. TTE [transthoracic echocardiogram] was without wall motion abnormality and no significant valve abnormality. No chest pain."

After quoting the hospitalist's notes, Liu wrote in claimant's medical chart, "So, there can be conjecture as to the cause, but no one knows for sure."

Later, after reviewing claimant's bloodwork, which Liu described as "unremarkable," and claimant's blood pressure after he fell,[5] Liu agreed with Mangum that there were a "number of possible causes [for claimant's] fall, but [Liu opined that] their role in the etiology of the syncopal or near-syncopal episode are, individually and collectively, speculative." Liu observed that each of the conditions that Mangum noted possibly could have caused claimant to faint, but he concluded that "we cannot say what caused the syncope or near-syncope and fall."

Before the board, SAIF recognized that the reason why claimant had fainted was unexplained.[6] It argued, how-

---

[5] Liu observed that claimant's blood pressure before the accident was unknown, that it was high immediately afterwards, but that it returned to normal levels later that day.

[6] Specifically, SAIF told the board "[t]he medical evidence in this case revealed that the cause of claimant's fall was a syncope or near-syncope of unknown etiology."

ever, that the reason why claimant fell was explained. He fainted. In SAIF's view, fainting will always be a personal risk unless a claimant proves that employment conditions caused the claimant to faint and sustain an injury.

The board observed that, although SAIF's argument was consistent with an older line of board orders, our decision in *Guill v. M. Squared Transportation, Inc.*, 277 Or App 318, 323-24, 371 P3d 523 (2016), had "rejected" the reasoning in those orders. The board accordingly looked to the Supreme Court's opinion in *Sheldon* to determine whether the reason why claimant fainted qualified as a neutral risk.

In undertaking that inquiry, the board initially appeared to collapse two related but separate issues that the court identified in *Sheldon*. Specifically, the board did not analyze separately whether there were any "facially nonspeculative idiopathic explanations" for why claimant fainted and, if there were, whether claimant had convinced the board that those facially nonspeculative explanations were, in fact, speculative. Rather, the board stated summarily, "we find that the record does not persuasively support a nonspeculative explanation for claimant's syncope."

The board's initial rationale for finding that claimant's injury resulted from a neutral risk states a conclusion without expressly working though the analytical steps that *Sheldon* identified. For that reason, we find the board's alternative rationale more persuasive. The board reasoned alternatively:

> "Additionally, even assuming that a *facially* nonspeculative explanation for the 2021 syncope is revealed by the opinions of Drs. Mangum and Liu that urinary retention, age, dehydration, hypertension, and posture could have caused the syncope, we find that this particular record (particularly the ultimate opinions of Drs. Mangum and Liu that the cause of the 2021 syncope was unknown) establishes that any *facially* nonspeculative explanation was speculative in light of all the admissible evidence."

(Emphasis in original.) That alternative rationale accurately tracks the framework that the court set out in *Sheldon*. Applying that framework, the board concluded that the

reason why claimant fainted (and thus fell) qualified as a neutral risk and arose out of employment. Because it also concluded that claimant's injury occurred in the course of his employment, the board ruled that claimant's injury was compensable.

In its second assignment of error, SAIF argues that the board's alternative rationale, which we have quoted above, is not supported by substantial evidence or substantial reason.[7] In our view, substantial evidence supports the board's factual finding that the facially nonspeculative idiopathic explanations that the board identified were, in fact, speculative. Liu did not merely assert that he could not tell why claimant fainted. Rather, Liu relied on the differential diagnosis that the hospitalist performed when claimant was being treated for his injuries. Specifically, Liu relied on the "syncope workup," in which the hospital ran a series of tests that included an electrocardiogram, a transthoracic echocardiogram, and a computerized tomography scan of claimant's head to determine why claimant fainted. Liu also considered claimant's bloodwork following the accident, which he described as unremarkable, and the blood pressure readings immediately after the accident and later.

Having reviewed the "syncope workup," Liu observed, "So, there can be conjecture as to the cause, but no one knows for sure." Later, Liu amplified his initial observation. He explained that there were a "number of possible causes [for claimant's] fall, but their role in the etiology of the syncopal or near-syncopal episode are, individually and collectively, speculative."

Liu's opinion provides ample support for the board's finding that the facially nonspeculative idiopathic explanations that the board identified for why claimant fainted were, in fact, speculative. To be sure, Liu did not tick down the list of possible explanations and address each one separately. However, the board reasonably could find that Liu relied on a differential diagnosis conducted by the hospital where claimant was treated for his injuries to determine

---

[7] SAIF does not argue that the board's alternative rationale failed to identify and consider any facially nonspeculative idiopathic explanation that the record disclosed.

why claimant fainted. The board could also find that Liu also considered claimant's bloodwork and his blood pressure readings, taken immediately after the accident and later in the day. Based on that evidence, Liu concluded that the possible explanations for why claimant fainted were, at best, "conjecture" or, as he later opined, were, "individually and collectively, speculative." Liu's opinion provides substantial evidence for the board's finding.[8]

SAIF also argues that the board's order is not supported by substantial reason. It contends that the board "failed to explain how, when the medical evidence reveals multiple potential idiopathic causes [for why claimant fainted], claimant eliminated idiopathic causes on this record." The board, however, explained that it relied on "this particular record (particularly the ultimate opinions of Drs. Mangum and Liu that the cause of the 2021 syncope was unknown)" in finding that claimant had carried his burden of production and persuasion. It is difficult to see why that explanation was not sufficient, particularly when, as the board's order previously noted, SAIF acknowledged in its filing with the board that "[t]he medical evidence in this case revealed that the cause of claimant's fall was a syncope or near-syncope of unknown etiology."

That leaves SAIF's primary argument on appeal, which runs as follows: Claimant's fall was not unexplained. He fell because he fainted. In SAIF's view, fainting will always be a personal risk unless a claimant proves that work conditions caused the claimant to faint. SAIF contends that, because claimant did not offer any proof in this case that work conditions caused him to faint, it necessarily follows that he fainted and fell as a result of a personal risk.

SAIF's argument assumes that fainting can never qualify as a neutral risk, even when the reason why the employee fainted (and thus fell) is unexplained. It may be that fainting will sometimes (or often) result from a personal risk, but it does not logically follow that fainting will always result from a personal risk or that the reason why an

---

[8] Indeed, Mangum concluded that the exact reason why claimant fainted "could not be determined," and SAIF admitted in its filing with the board that claimant's fainting episode was "of unknown etiology."

employee fainted can never be "unexplained." Indeed, both doctors in this case concluded that the reasons why claimant fainted were either unknown or at most speculative. Rather than assuming that fainting can never qualify as a neutral risk, as SAIF does, the better course (and the one that is consistent with the Supreme Court's and our cases) is to employ the methodology set out in *Sheldon* to determine whether the reason why an employee fainted in a particular case resulted from a personal risk or a neutral one.

As the board observed, SAIF's primary argument on judicial review appears to be based on a series of board orders that began with *Billie J. Owens*, 58 Van Natta 392 (2006), *aff'd without opinion*, 213 Or App 587, 162 P3d 1095 (2007). In *Billie J. Owens*, the board declined to find that a fall that occurred after an employee fainted for unknown reasons qualified as a neutral risk. 58 Van Natta at 393. However, as the board explained in its order in this case, our decision in *Guill*, 277 Or App at 323-24, rejected that line of reasoning. We agree with the board.

We explained in *Guill* that the reasoning in *Livesley* (later clarified in *Sheldon*) "govern[s] the determination of whether an injury is one 'arising out of' a claimant's employment *in any case* involving an injury that qualifies as a neutral risk because its cause cannot be ascertained." *Id.* at 324 (emphasis added). We accordingly rejected the employer's argument in *Guill* that the neutral risk doctrine is limited to unexplained fall cases. *Id.* Rather, interpreting the Supreme Court's decisions, we held that the doctrine also applied when a truck driver fainted for unknown reasons, drove his truck off the road, but suffered no physical injuries. *Id.* It follows from our decision in *Guill* that the reason why claimant fainted in this case can result from a neutral risk, contrary to SAIF's argument on judicial review.

SAIF argues, however, that *Guill* is distinguishable for two reasons. It notes initially that "the injury at issue in *Guill* was the syncope itself." As SAIF correctly observes, we explained in *Guill* that fainting qualified as an injury in that case because it was "a harm that require[d] diagnostic medical services." 277 Or App at 321. In this case, claimant fainted, fell, and injured himself requiring diagnostic

and other medical services. The fact that claimant required more medical services than the claimant in *Guill* provides no reason to give claimant less protection or to treat the cause of the two claimants' injuries differently, when the reason why both claimants required medical services (fainting) was unexplained.

SAIF argues that this case differs from *Guill* in a second respect. It notes that the parties in *Guill* stipulated that the reason why the claimant in that case fainted was "truly unexplained." While true, the board applied the *Sheldon* analysis in this case and concluded that claimant's fainting episode qualified as a neutral risk. That finding serves the same function as the stipulation in *Guill*.[9] Not only do the two grounds on which SAIF seeks to distinguish *Guill* fail, but SAIF never offers a persuasive explanation why the relevant holding in *Guill*—that the neutral risk doctrine is not limited to a particular type of case but applies instead "in any case" where the cause of the injury is unexplained—is not controlling. We accordingly affirm the board's order.

Affirmed.

---

[9] Moreover, as noted above, SAIF told the board that "[t]he medical evidence in this case revealed that the cause of claimant's fall was a syncope or near-syncope of unknown etiology"—an admission that seems comparable to the stipulation in *Guill*.