Argued and submitted September 3, 2015, vacated and remanded
October 12, 2016

In the Matter of the Compensation of
Catherine A. Sheldon, Claimant.

Catherine A. SHELDON,
*Petitioner,*

*v.*

US BANK,
*Respondent.*

Workers' Compensation Board
1204027; A156285

381 P3d 1006

Spencer D. Kelly argued the cause for petitioner. With him on the briefs was Welch, Bruun & Green.

Jerald P. Keene argued the cause for respondent. With him on the brief was Oregon Workers' Compensation Institute, LLC.

Before Lagesen, Presiding Judge, and Hadlock, Chief Judge, and Garrett, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## GARRETT, J.    •

Claimant seeks review of an order of the Workers' Compensation Board upholding employer's denial of her injury claim. At the time of the injury, claimant worked at premises leased by employer. While walking through the building's lobby on her way to work, claimant fell and sustained a fractured shoulder. She filed a claim, which employer denied. An administrative law judge (ALJ) upheld the denial on the ground that the lobby was not under the employer's control, and that claimant's injury therefore had not occurred within the course of her employment.

The board affirmed on a different ground, concluding that claimant had failed to establish that her injury "arose" from her employment because she did not persuasively eliminate idiopathic[1] reasons for her fall. On judicial review, claimant raises two assignments of error. We address only the second assignment, in which claimant argues that the board erred in concluding that she failed to persuasively eliminate idiopathic reasons for her fall. Reviewing the board's order for substantial evidence, substantial reason, and legal error, *Luton v. Willamette Valley Rehabilitation Center*, 272 Or App 487, 490, 356 P3d 150 (2015), we conclude that the board applied an incorrect legal standard and, accordingly, we vacate and remand.

The relevant facts are undisputed. Claimant arrived in the morning for work and was walking through the lobby of the building where employer leases office space, on her way to the elevator. She slipped or tripped and fell forward, sustaining an injury to her left shoulder that required transport by ambulance to the emergency room. Claimant's accounts of how she fell varied. She told the responding paramedics that she was "walking and then her foot got caught and she tripped and fell." According to an emergency room nurse, claimant said that "her foot rolled and she tripped and fell." Claimant later told employer's investigator that she fell when "her foot caught someplace on the tile floor."

---

[1] In the workers' compensation context, the term "idiopathic" means "peculiar to the individual" and not "arising from an unknown cause." *Blank v. US Bank of Oregon*, 252 Or App 553, 558 n 2, 287 P3d 1272 (2012) (citing *Phil A. Livesley Co. v. Russ*, 296 Or 25, 27 n 1, 672 P2d 337 (1983) (*Livesley*)).

She separately told an examining physician that she was walking into work "when she slipped and fell somehow."

Employer denied claimant's workers' compensation claim; claimant appealed. Employer posited that the fall was caused by idiopathic factors associated with claimant's obesity. Claimant's medical records were reviewed by Dr. Bell on behalf of employer. In a letter opinion, Bell noted that claimant suffers from diabetes and "severe obesity" and opined that "it is at least equally possible [claimant's] fall * * * was caused by idiopathic problems associated with diabetes and/or obesity as it was due to risks associated with employment." Bell explained that diabetes is known to cause peripheral neuropathy, which affects sensation and reflexes in the lower extremities. Bell also opined that claimant's "documented proportions most likely affected her balance and mobility" and that her "performance in activities of daily living, including walking across a lobby, were diminished in some manner by her obesity."

In a different letter opinion, claimant's own physician since 2002, Dr. Kelly, noted that claimant has no history of peripheral neuropathy and opined that claimant's diabetes played "absolutely no role" in her fall. Kelly agreed that obesity can, in some people, cause problems with balance and mobility but stated that claimant has no history of falling or experiencing such problems because of her weight.

At a hearing before an ALJ, claimant testified that, although she had never been diagnosed with peripheral neuropathy, she had experienced "some tingling" in her feet in the past. Claimant denied, however, that that tingling had ever caused her to fall. Claimant also testified that she broke her ankle when she was 18 years old[2] and that she occasionally experiences some resultant ankle weakness. Nevertheless, claimant testified that she had scored in the "high 90[th] percent range" in post-injury balance testing and was determined not to be at risk for falling. At a deposition, Kelly testified that, although claimant's reported tingling sensation "could be" consistent with peripheral neuropathy, numerous other medical explanations exist for tingling

---

[2] At the time of the hearing, claimant was 64 years old.

in the feet of a diabetic. Kelly also acknowledged that several additional factors—claimant's obesity, ankle weakness, and antihypertensive medication—had the "potential" to have contributed to claimant's fall. Kelly emphasized, however, that he had "no way of knowing" whether any of those factors actually contributed to claimant's fall, or whether it was "equally possible" that claimant's fall was caused by personal risks as work-related factors.

The ALJ concluded that the idiopathic factors cited by employer were "speculative":

> "Claimant has provided more [than] one explanation for her fall. She either slipped, tripped or turned her ankle. Mostly, she has described catching her foot on the 1/16th inch lip of floor tile. The employer contends that there are a number of personal/idiopathic risk factors which explain Claimant's fall as well as Claimant's theory does. However, Dr. Bell only suggested that it was 'possible' for personal factors to have contributed to Claimant's fall. Dr. Kelly recognizes that peripheral neuropathy, obesity, ankle weakness and [antihypertensive] medications are potential causes for falls but he has no information from which to conclude that in Claimant's case these are more than potential causes. Since the alleged personal/idiopathic risks offered are speculative, they are less than equally likely to have caused the fall as Claimant's explanation of a tripping incident. I find therefore that Claimant has eliminated idiopathic causes for her fall."

The ALJ next concluded, however, that claimant had failed to show that the injury occurred in the "course of" employment. The basis for that conclusion was the finding that claimant fell in an area of the building, the lobby, that was not within employer's control.

The board affirmed the ALJ's ruling on a different ground. Without addressing the issue of whether employer had control over the lobby area, the board determined that claimant had failed to show an injury "arising from" her employment because the cause of the fall was unknown and claimant had failed to persuasively eliminate all idiopathic factors of causation. Taking a different tack than the ALJ, the board reasoned that

"the medical evidence raised the possibility that idiopathic factors (such as peripheral neuropathy, morbid obesity, ankle weakness and antihypertensive medications) caused, or contributed to, claimant's fall. We acknowledge that, while he was claimant's primary care physician, Dr. Kelly found no evidence of peripheral neuropathy, loss of balance due to obesity, ankle weakness, or lightheadedness due to antihypertensive medications. However, despite the lack of specific findings, Dr. Kelly unequivocally concluded that those idiopathic factors could not be excluded as a possible cause of claimant's fall. Specifically, he confirmed that those four personal risk factors 'have the potential to have contributed to [claimant's] fall.'

"Dr. Bell also concluded that claimant's medical conditions of severe obesity and diabetes were potential contributing causes of claimant's fall. In particular, she opined that it was 'equally possible' that claimant's fall was caused by idiopathic problems as it was due to work-related risks. As noted above, an 'equally possible' determination regarding a fall at work does not establish that an injury arose out of a claimant's employment.

"Under such circumstances, we find that claimant did not persuasively eliminate the possible idiopathic reasons for her fall, as described by Drs. Bell and Kelly."

(Internal citations omitted.) The board concluded that claimant's fall was not "truly unexplained" and affirmed the denial of the claim. On appeal, claimant assigns error to the board's conclusion that claimant failed to persuasively eliminate idiopathic factors as possible causes for her fall.[3]

---

[3] The concurrence takes a somewhat different view of the record and would remand on the ground that the board failed to recognize that claimant was actually arguing that her fall was an *explained* fall, that is, one caused by an identified employment risk. That is the subject of claimant's first assignment of error. We agree that the board did not understand claimant to be making an "explained fall" argument (at least, not a coherent one). The board explained in a footnote: "Claimant does not contend that an employment risk contributed to her injury. *Moreover, our review finds no such employment contribution.*" (Emphasis added.) The concurrence notes that the first quoted sentence is incorrect, and would remand for that reason on the theory that the board may have failed to give claimant's argument due consideration. But the italicized sentence indicates that the board independently considered whether an employment risk was present and concluded that it was not. We assume that the board did what it said.

Furthermore, the concurrence's analysis is based in part on what it characterizes as the board's failure to address the ALJ's finding that claimant's explanation of the fall was the more likely one. In fact, the ALJ said that claimant

We begin with the relevant legal principles. A "compensable injury" is "an accidental injury \*\*\* arising out of and in the course of employment requiring medical services or resulting in disability." ORS 656.005(7)(a). As we observed in *Blank v. US Bank of Oregon*, 252 Or App 553, 557, 287 P3d 1272 (2012),

> "'in order for a claim to be compensable, it must both occur *in the course of* the claimant's covered employment and *arise out of* that employment. The requirement that the injury occur in the course of employment concerns the time, place, and circumstances of the injury. The requirement that it arise out of employment requires a causal link between the injury and the employment. Those requirements are two prongs of a single work-connection inquiry. In order for the injury to be compensable, there must be some support for each prong, but neither prong is dispositive.'"

(Quoting *SAIF v. Uptegrove*, 226 Or App 45, 48, 202 P3d 264 (2009) (emphases in *Uptegrove*).). A claimant has the burden of proving compensability by a preponderance of the evidence. ORS 656.266; *Blank*, 252 Or App at 557.

An injury that is unexplained and occurs in the course of employment is presumed, as a matter of law, to arise out of the employment. *Uptegrove*, 226 Or App at 49 (citing *Phil A. Livesley Co. v. Russ*, 296 Or 25, 30, 672 P2d 337 (1983) (*Livesley*)). Whether an injury is "truly unexplained" is a question of fact, and an injury "will be deemed truly unexplained only if the claimant persuasively eliminate[s] all idiopathic factors of causation." *Blank*, 252 Or App at 557-58 (internal quotation marks and citations omitted; brackets in original); *Livesley*, 296 Or at 32 ("[W]here idiopathic causes for an unexplained fall have been eliminated, the

---

had provided "more [than] one explanation" for her fall—she "either slipped, tripped or turned her ankle. Mostly, she has described catching her foot on the 1/16th inch lip of floor tile." Nothing in the ALJ's order indicates that the ALJ was *persuaded* that a 1/16th inch lip of a floor tile *caused the fall*. Rather, and consistently with an *unexplained fall* analysis, the ALJ proceeded to address the "personal/idiopathic risk factors" identified by employer, concluding that they were "speculative" and therefore "less than equally likely to have caused the fall as Claimant's explanation of a *tripping incident*." (Emphasis added.) That language expresses no affirmative view as to causation (on the contrary, the description of a "tripping incident" is question-begging). It simply concludes that idiopathic factors are *less than equally likely* to have caused the fall, which is all that the ALJ had to do in order to conclude that the fall was truly unexplained.

inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employment premises exposed the employee."). If it remains "equally possible" that idiopathic factors, rather than work-related factors, caused the injury, the claim is not compensable. *Blank*, 252 Or App at 558; *Guill v. M. Squared Transportation, Inc.*, 277 Or App 318, 323 n 2, 371 P3d 523 (2016).

On appeal, claimant argues that the board's finding that claimant's fall was not "truly unexplained" is not supported by substantial evidence or substantial reason. Claimant contends that the medical evidence from Bell and Kelly establishes, at most, that idiopathic factors *generally* associated with diabetes and obesity have the potential to cause problems with balance and mobility, not that those idiopathic factors exist for claimant or were possible causes of her fall. Claimant points out that Bell never examined claimant or opined that claimant had peripheral neuropathy. Rather, Bell opined only that diabetes "is known to cause peripheral neuropathy," that peripheral neuropathy in the lower extremities affects "sensation and reflexes," and that claimant's "diabetes, therefore, is a potential contributing cause" of the fall. Claimant also argues that the board's determination is not supported by the evidence from Kelly, who, according to claimant, opined only in the abstract that the idiopathic factors cited by employer have "the potential" to contribute to falling, while also clarifying that claimant had "absolutely no history of any of [the] four potential problems causing her to fall."

Employer responds that claimant's argument improperly asks us to substitute our view of the medical evidence for that of the board, contrary to the requirement that we affirm the board's determination if the record, viewed as a whole, would permit a reasonable person to make the finding in question. ORS 183.482(8)(c); *see also Dynea USA, Inc. v. Fairbanks*, 241 Or App 311, 318, 250 P3d 389 (2011) ("We cannot substitute our view of the evidence for that of the board."). Employer also argues that it was not unreasonable for the board to rely on "possible" or "potential" causes of the fall because the board had already determined that the record lacked sufficient evidence to render claimant's fall an "explained" fall. In evaluating whether claimant had

persuasively eliminated idiopathic factors, employer, relying on our decision in *Blank*, argues that the board could reasonably focus on the "potential" or "possible" causes identified by Bell and Kelly.

Citing the medical evidence discussed above, the board concluded that claimant had not persuasively eliminated the possibility of idiopathic causation. Specifically, the board relied upon Bell's opinion that it was "equally possible" that idiopathic factors associated with claimant's obesity and diabetes caused her to fall as it is that any work-related risk caused her to fall. The board also relied upon Kelly's testimony that idiopathic factors "could not be excluded" as factors and had the "potential" to have contributed to claimant's fall even though claimant had no history of peripheral neuropathy, mobility and balance problems, or falling because of her weight.

In reaching its decision, the board drew from a line of cases commencing with *Livesley*, 296 Or 25, and ending with *Blank*, 252 Or App 553, all of which stand for the proposition that it is the claimant's burden to persuasively eliminate idiopathic causes for otherwise unexplained falls at work. Despite the consistency with which we have employed that terminology, we have, admittedly, provided little guidance as to what it means to "persuasively" eliminate idiopathic factors of causation. The result has been a lack of clarity as to the type of evidence that is required for a claimant to establish compensability of an otherwise unexplained injury. We now correct that deficiency.

It is a claimant's burden to prove compensability of an injury by a preponderance of the evidence. *See* ORS 656.266(1) (burden of proving compensability is on the claimant); *SAIF v. Alton*, 171 Or App 491, 497, 16 P3d 525 (2000) ("The claimant must meet his or her burden by a preponderance of the medical evidence."). In the context of an unexplained fall, that means that a claimant must establish that idiopathic factors are less than equally likely as work-related factors to have caused the injury. The abstract possibility of idiopathic causation always exists; thus, the requirement that a claimant prove that idiopathic factors were less than equally likely to have caused a fall does not

mean that a claimant must conclusively disprove any *possibility* of an idiopathic cause. The legal question is whether claimant has adequately explained why idiopathic factors were not the cause of the injury, not whether claimant has disproved all possible explanations for an unexplained fall. *See McTaggart v. Time Warner Cable*, 170 Or App 491, 503, 16 P3d 1154 (2000), *rev den*, 331 Or 633 (2001) ("The essential fact to be proved is the lack of explanation; eliminating other causes is a way of proving that fact."). Conversely, where the possible explanations for the injury or fall are *equally* idiopathic and unexplained, the claimant has not sustained the burden of proof. *See McAdams v. SAIF*, 66 Or App 415, 418-19, 674 P2d 80, *rev den*, 296 Or 638 (1984) (idiopathic factors of causation were not eliminated where the claimant's evidence showed that it was equally possible that the cause of the claimant's fall—a spontaneous fainting spell—was idiopathic as it was work-related). In other words, where the evidence is in equipoise as to causation between idiopathic and unexplained causes, claimant cannot prevail.

Here, the board concluded that, because "the medical evidence raised the *possibility* that idiopathic factors * * * caused, or contributed to, claimant's fall," claimant had failed to persuasively eliminate idiopathic causes. (Emphasis added.) The standard applied by the board—reflected in the board's reliance on Kelly's statement that idiopathic factors "could not be excluded"—effectively required claimant to conclusively rule out all possible idiopathic causes of her injury, no matter how remote, to prove that her injury is compensable. As explained above, such a standard is inconsistent with claimant's burden of persuasion, which requires only that claimant prove that idiopathic factors were less likely to have caused her fall than some other, unexplained factors.

Employer contends that the board's decision was correct for the reasons articulated in *Blank*. The claimant in that case was injured after she fell in the employer's lunchroom. Long before that injury, the claimant had been diagnosed with Churg-Strauss Syndrome (CSS) and treated for many complaints associated with that condition,

including asthma, joint and bone pain, stiffness, lethargy, vertigo, and inner-ear problems. *Blank*, 252 Or App at 554. Due to her CSS, the claimant had also developed peripheral neuropathy, which occasionally caused numbness in her lower extremities. Additionally, the claimant suffered from obstructive sleep apnea. A neurologist's report initially concluded that it was "possible, although not probable" that the claimant's CSS could have contributed to the fall. *Id.* at 555. The same neurologist later opined that claimant's medical history and diagnosis of CSS "clearly raises the possibility that idiopathic factors caused [claimant] to fall at work" and that it was "at least equally possible [that claimant's] fall was caused by problems associated with [CSS] than [with] risks associated with employment." *Id.* (brackets in original). The board determined that the claimant's fall was not truly unexplained because she had failed to adequately eliminate all possible idiopathic factors of causation. We concluded that the board's finding was supported by substantial evidence, including testimony by the neurologist that suggested "potential idiopathic causes for claimant's fall, including balance problems secondary to both the inner-ear problems and neuropathy that are symptomatic of CSS and sleep apnea." *Id.* at 559. The possibility of idiopathic causation was further corroborated by the claimant's own testimony that her inner-ear problems and numbness in her left foot "are always present." *Id.* Given the claimant's extensive history of problems associated with CSS, we agreed with the board that claimant's medical record raised "the possibility" that idiopathic risks particular to the claimant had contributed to her fall. *Id.* at 559-60.

The critical difference between *Blank* and this case is that, in *Blank*, the claimant actually had a diagnosed medical condition and associated symptoms that, in the view of medical experts, likely caused her to fall. Based on that evidence, the board could conclude that the claimant had failed to carry her burden of persuasively eliminating idiopathic causes of her injury. Stated another way, the claimant's evidence in *Blank* did not persuade the fact finder that the cause of the injury was more likely work-related than personal to the claimant. In this case, however, the board held claimant to a higher standard when it required her to

disprove all possible idiopathic causes of her fall. That standard is inconsistent with our decision in *Blank*; all claimant was required to show is that it was less than equally likely that idiopathic factors caused her to fall, not that there was *no possibility* that such idiopathic factors could have contributed to the fall. Accordingly, we vacate the board's order and remand for reconsideration under the correct legal standard.[4] *See SAIF v. Thompson*, 360 Or 155, 165 n 9, 379 P3d 494 (2016) ("Ordinarily, if the board applied an incorrect legal standard, the appropriate disposition would be to reverse the board's order and remand the case to the board to apply the correct standard.").

Vacated and remanded.

**LAGESEN, J.,** concurring.

I concur in the majority opinion's decision to vacate and remand in this case, but not in its reasoning for doing so. In particular, I disagree that the board's opinion indicates that it misunderstood the nature of a claimant's "burden of eliminating idiopathic causes" under *Phil A. Livesley Co. v. Russ*, 296 Or 25, 32, 672 P2d 337 (1983) (*Livesley*), in a case in which a claimant seeks to establish the compensability of a workplace fall under the "unexplained fall" doctrine. Under that doctrine, as articulated in *Livesley*, where a fall in the workplace in unexplained—that is, the cause of the fall "cannot be directly established"—a claimant may nonetheless prove indirectly that the fall was caused by the work environment (and, therefore, arose from the work environment) by "eliminating idiopathic causes" for the fall. *Id.* A claimant may do so by producing "affirmative evidence to exclude idiopathic factors as the cause of her injury." *Id.* If that evidence persuades the factfinder (by the applicable standard of proof) that idiopathic factors did not cause the claimant's injury, then "the inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employment premises exposed the employee." *Id.*

---

[4] Although the ALJ concluded that claimant had failed to show an injury that occurred "in the course of" employment, the board did not reach that issue. Thus, if the board concludes on remand that claimant has satisfied her burden with respect to the "arising out of" prong, it will be necessary for the board to address the "course of employment" rationale relied on by the ALJ.

From the board's explanation of its reasoning in the order on review, I am not inclined to think that the board misunderstood a claimant's burden to eliminate idiopathic factors of causation in the context of a claim litigated under the unexplained fall doctrine. I would not, therefore, remand on that basis. I would, however, remand for a different reason: that the board erred by invoking the "unexplained fall" doctrine in this case, where claimant presented direct evidence of causation, and did not seek to prove causation indirectly by invoking the unexplained fall doctrine.

Claimant's first assignment of error raises this point. Claimant points out that her theory all along has been that her fall was caused by a tripping hazard in the lobby of her workplace, and contends that the unexplained fall doctrine is inapplicable where, as here, a claimant seeks to establish causation directly rather than indirectly. In her briefing before the ALJ, she urged the ALJ to find that the fall was "explained" by the fact that she had tripped over uneven tile. In its briefing, employer urged the ALJ to find affirmatively to the contrary that claimant's fall was caused by idiopathic factors and not the tile. In other words, both parties asserted that the fall's cause was known or explained, but provided conflicting theories of causation. Consistent with those competing theories, a fair portion of the hearing before the ALJ centered on the condition of the lobby floor and, in particular, on how pronounced the uneven portion of the tile was, and also on how claimant's idiopathic medical conditions may have contributed to the fall.

As to the floor's role in claimant's injury, claimant testified under oath at the hearing that she fell when, as she walked across the lobby while wearing Birkenstocks, her foot "caught on something," causing her to trip and fall. Claimant thought her foot caught on a lip of tile. Although she admitted on cross-examination that she did not know "what her foot got caught on," she testified that she believed it was the lip of tile because "[t]hat's the only thing that I know that it could have been." She testified further that the lip was not "real big," but that it was visible "and if you run your foot against [it], you can definitely feel it." Another worker in the building corroborated claimant's testimony that the floor was not completely flush, and that there was

a "dip" between the tiles. He thought that it would be "difficult" to catch one's foot in the lip or dip, explaining that he had run his foot over the tiles while wearing dress shoes, but had not caught his foot on anything when he was doing that. Everyone seemed to agree that the lip measured around 1/16th of an inch, although no one had measured it. Claimant's medical records, as well as the report of the employer's investigator, were also introduced. Those records reflect that, with minor exceptions,[1] claimant consistently has reported that the fall resulted from her foot catching on something, probably tile, which then caused her to trip. The investigator's report notes, consistent with the testimony at the hearing, that "[t]here is a tile with the slightest of a lip, about 1/16 of an inch perhaps."

The ALJ ultimately resolved the parties' dispute on causation in favor of claimant. The ALJ credited claimant's "tripping" explanation of the fall as the more likely explanation than the idiopathic theory of causation advanced by employer: "Since the alleged personal/idiopathic risks offered are speculative, they are less than equally likely to have caused the fall as Claimant's explanation of a tripping incident."[2] In addition to finding claimant's explanation of the fall more persuasive than employer's explanation, the ALJ also found that claimant had persuasively eliminated all idiopathic factors of causation, apparently in response to employer's argument that claimant needed to do so.

Before the board, claimant reiterated the same points that she made to the ALJ, again contending (among other things) that the unexplained fall doctrine should not

---

[1] One medical record states that claimant reported that her foot rolled and she tripped; another states that claimant reported that she "slipped." When cross-examined on those records, claimant testified that her foot did not roll, that she tripped not slipped, and that she did not think that she would have told doctors otherwise, because "[t]here was nothing to slip on," and because she had tripped.

[2] The majority opinion reads this statement by the ALJ differently than I do, concluding that the ALJ did not credit claimant's testimony that the fall was caused by the tripping incident. 281 Or App at 565 n 3. Although the sentence is worded awkwardly, a finding that the idiopathic factors of causation were speculative, and, therefore, less than equally likely to have caused the fall than the tripping incident to which claimant testified under oath is, in my view, the equivalent of a finding that, on this record, claimant's explanation of the fall is the likely one.

apply to the case because she had supplied an explanation for the fall.[3] Claimant acknowledged that there were some "minor" inconsistencies in her explanations for her fall, but argued that the gist of her explanation has always been the same. The board nonetheless treated the case as an "unexplained fall" case, and did not address claimant's argument that her fall had been caused by the uneven tile, except to state in a footnote that "[c]laimant does not contend that an employment risk contributed to her injury. Moreover, our review finds no such employment contribution."

The board's conclusion that "[c]laimant does not contend that an employment risk contributed to her injury" does not square with the record in this case. Claimant's theory all along has been that something in the lobby, most likely the uneven tile, caught her foot and tripped her. Claimant testified under oath in support of that theory, describing on the stand how her fall happened. The ALJ addressed that theory and found that, on this record, claimant's theory provided the more likely explanation for her fall than did employer's speculative theory of idiopathic causation. Under those circumstances, the board erred when it determined that claimant was not contending that her fall was caused by an employment risk and decided to resolve the case under the unexplained fall doctrine. In my view, that error constitutes a procedural error that warrants a remand to permit the board to address claimant's actual theory of the case. ORS 656.298(7) (providing that review of board orders "shall be as provided in ORS 183.482(7) and (8)"); ORS 183.482(7) (providing for a remand where "the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure"). The board misapprehended claimant's claim in an essential way and, based on that misapprehension, failed to address it.

I recognize that the board also stated that "our review finds no such employment contribution," after it concluded that claimant was not advocating that her work

---

[3] Claimant also argued that, if the unexplained fall doctrine applied, then the board should find that she had eliminated idiopathic factors of causation for the fall.

environment caused her fall. That statement creates the possibility that the board's error did not impair the fairness of the proceedings before it. If the board, in fact, gave due consideration to the role that the uneven floor may have played in claimant's fall, then the board's failure to understand the gravamen of claimant's claim could not have impaired the fairness or correctness of the board's decision. However, ORS 183.482(7) directs us to remand where the fairness or correctness of the proceedings "*may* have been impaired" as a result of a procedural error; we need not be certain of that impairment. (Emphasis added.)

The majority opinion concludes that the board's error did not impair the fairness or correctness of the proceedings, because it "assume[s] that the board did what it said" in examining the record to determine whether an employment risk was present. 281 Or App at 565 n 3. Ordinarily, that would be my approach too. However, in this case, I am persuaded otherwise that, notwithstanding the board's statement, the board's misunderstanding of claimant's theory of the case "may" have impaired the fairness or correctness of the proceedings for three reasons. First, the board did not discuss specifically the role the floor tile may have played in claimant's fall, despite the direct evidence that the tile did play a role, and the centrality of that evidence to claimant's case. Second, the board did not discuss the ALJ's finding that claimant's explanation of the fall should be credited over employer's competing explanation for the fall, although caselaw indicates that the board should afford some deference to an ALJ's demeanor-based credibility findings. *See Erck v. Brown Oldsmobile*, 311 Or 519, 528, 815 P2d 1251 (1991) ("[T]he Board should seriously consider the testimony [the ALJ] believes to be reliable."). Given that claimant testified in person about how the fall occurred, it is hard not to think that claimant's appearance on the stand had some bearing on the ALJ's assessment of the evidence supporting the competing explanations for the fall, yet the board did not address this point. Third, the board's decision to apply the unexplained fall doctrine in a case in which the claimant has not invoked that doctrine to prove causation—and in which there is direct evidence of causation—appears to depart from the usual circumstances in which the doctrine

has been applied.[4] This also suggests to me that the board might have seen this case differently if it had understood claimant's theory correctly.

Those circumstances convince me that the board's misunderstanding of claimant's theory of the case may have caused it to overlook the direct evidence of causation that supports claimant's theory and to apply the unexplained fall doctrine in a case in which the fall at issue is not so much "unexplained" as it is the subject of factual dispute over causation. Although the majority opinion concludes that a remand is warranted for a different reason, I do not understand that opinion to foreclose the board from taking these considerations into account on remand.

For these reasons, I concur in the decision to vacate and remand to the board.

---

[4] *See, e.g., Livesley,* 296 Or at 27 (defining the scope of the unexplained fall doctrine in a case where there was no evidence to explain fall, and the claimant "was unable himself to offer a cause for the fall, however, and admitted that all he could remember of the incident was simply falling"); *Blank v. US Bank of Oregon,* 252 Or App 553, 557-58, 287 P3d 1272 (2012) (applying unexplained fall doctrine where the claimant could not recall the reason for her fall, and there was no other evidence of potential causes); *McTaggart v. Time Warner Cable,* 170 Or App 491, 494, 16 P3d 1154 (2000), *rev den,* 331 Or 663 (2001) (applying unexplained fall doctrine where claimant "[did] not know the reason for her fall," and there was no other evidence of cause of fall).