DUNCAN, J.
**833 In this workers' compensation case, claimant injured her shoulder after falling in the lobby of the office building where she worked. Claimant contends that she suffered a compensable injury that arose out of employment because her fall was unexplained and occurred at work. Employer, US Bank, contends that the injury was not unexplained because claimant failed to eliminate idiopathic factors related to her personal medical conditions that might have caused her fall.[1]
The Workers' Compensation Board (the board) concluded that claimant failed to establish that her fall was unexplained. The Court of Appeals held that the board applied the wrong standard, vacated the board's decision, and remanded the case to the board to apply the standard in the manner directed by that court. Sheldon v. US Bank , 281 Or. App. 560, 571, 381 P.3d 1006 (2016). Although we disagree with the standard expressed by the Court of Appeals, we nevertheless reach the same result for the reasons explained below. We therefore affirm the decision of the Court of Appeals, vacate the board's decision, and remand the case to the board.
Some legal background is useful before describing the facts and procedural history in this case. A claimant bears the burden of proving that his or her injury is compensable. ORS 656.266(1). "A 'compensable injury' is an accidental injury *** arising *213 out of and in the course of employment requiring medical services or resulting in disability or death." ORS 656.005(7)(a). "The phrases 'arise out of' and 'in the course of' are two elements of a single inquiry into whether an injury is work-related. This is called the 'work-connection' test." Redman Industries, Inc. v. Lang , 326 Or. 32, 35, 943 P.2d 208 (1997) (quoting Fred Meyer, Inc. v. Hayes , 325 Or. 592, 596, 943 P.2d 197 (1997) ). "The 'in the course of' employment prong requires that the time, place, and circumstances of the injury justify connecting the injury to the employment." **834 Robinson v. Nabisco, Inc. , 331 Or. 178, 186, 11 P.3d 1286 (2000). The "arising out of" employment prong "requires that 'some causal link exist' between the worker's injury and his or her employment." Id. (quoting Krushwitz v. McDonald's Restaurants , 323 Or. 520, 526, 919 P.2d 465 (1996) ).
Under the unitary test for work-connectedness, a claimant cannot establish a compensable injury unless both the "arising out of" employment prong and the "in the course of" employment prong are satisfied to at least "some degree." Redman Industries , 326 Or. at 35, 943 P.2d 208. The board in this case concluded that claimant failed to prove, even to some degree, that her injury arose out of employment and, as a result, never reached the question of whether claimant established that her injury occurred in the course of employment. Thus, the dispute before us centers on the "arising out of" employment prong.
To establish that an injury arose out of employment, a claimant must establish that the injury "had its origin in a risk connected with the employment or rationally and naturally incidental thereto." Phil A. Livesley Co. v. Russ , 296 Or. 25, 32, 672 P.2d 337 (1983). There are three types of risks: employment risks, personal risks, and neutral risks. Id. at 29-30, 672 P.2d 337. Employment risks are those risks that are "distinctly associated with the employment." Id. (internal quotation marks omitted). Personal risks are "risks personal to the claimant." Id. (internal quotation marks omitted). And neutral risks are risks that are neither employment risks nor personal risks. Id. at 30, 672 P.2d 337.
An injury arising out of employment is not confined to injuries that result from employment risks. Instead, an injury arises out of employment if either (1) the injury results from an employment risk or (2) the injury results from a neutral risk where " 'the conditions of employment put [a] claimant in a position to be injured.' " Panpat v. Owens-Brockway Glass Container, Inc. , 334 Or. 342, 350, 49 P.3d 773 (2002) (quoting Livesley , 296 Or. at 29-30, 672 P.2d 337 ). An injury that results solely from a personal risk, however, does not arise out of employment and is therefore not compensable. Id.[2]
**835 As relevant to this case, neutral risks where the conditions of employment put a claimant in a position to be injured include unexplained falls that occurred on the job. Id. at 350, 49 P.3d 773 ("Unexplained accidents are a classic example of neutral risks[.]" (Internal quotation marks omitted.)).[3] Thus, a claimant may prove that an injury arose out of employment if the injury resulted from an unexplained fall that occurred on the job. See Livesley , 296 Or. at 32, 672 P.2d 337 (compensating injuries resulting from an unexplained fall that occurred on the job).[4]
*214 Personal risks include a claimant's personal medical conditions, such as conditions that can lead to an idiopathic fall. See, e.g. , Hamilton v. SAIF , 256 Or. App. 256, 259, 302 P.3d 1184 (2013), rev. den. , 354 Or. 148, 311 P.3d 525 (2013) ("[T]he parties agree that the fall was idiopathic in nature and that the risk of the fall that led to claimant's injuries was personal to claimant[.]"); see also 1 Larson's Workers' Compensation Law § 4.02 at 4-2 (describing medical conditions as personal risks). A claimant cannot prove that an injury arose out of employment if the injury resulted solely from an idiopathic fall.
The distinction between an unexplained fall and an idiopathic fall frames the parties' dispute in this case. Claimant fell on her way to work while walking through the lobby of an office building where employer leased office space. As a result of the fall, claimant fractured a bone in her shoulder. Paramedics responded, and claimant told them that she had been "walking and then her foot got caught and she tripped and fell." Claimant was transported by ambulance to a hospital, and she told an emergency room nurse that "her foot rolled and she tripped and fell."
**836 Claimant filed a workers' compensation claim, which employer denied. Claimant then requested a hearing before an administrative law judge (ALJ). At the hearing, claimant testified that she fell because she tripped over something. Claimant did not know what caused her to trip, but she suspected that her foot got caught on the lip of a floor tile because she was unable to identify any other hazards in the lobby that could have caused her fall. Claimant admitted that the tile lip was not "real big." Employer's investigator determined that the tile had "the slightest of a lip," probably around 1/16th of an inch, a measurement that sounded correct to claimant.
Employer contended that claimant's injuries were not compensable because her fall could have been caused by idiopathic factors, specifically, claimant's diabetes and obesity. In support of its contention, employer submitted a letter opinion by a physician, Dr. Bell. Bell had reviewed claimant's medical records but had never examined claimant personally. Based on her review of claimant's records, Bell opined that claimant's diabetes was a "potential contributing cause" in her fall because diabetes"is known to cause peripheral neuropathy" and "[p]eripheral neuropathy in the lower extremities *** affects sensation and reflexes." Bell also opined that claimant's obesity was "a potential contributing factor" in her fall because it "most likely affected her balance and mobility." Bell concluded that "symptomatic manifestations of diabetes and obesity could have caused [claimant] to fall." She further concluded that it was "at least equally possible [claimant's] fall *** was caused by idiopathic problems associated with diabetes and/or obesity as it was due to risks associated with employment."[5]
Claimant testified that she had never been diagnosed with peripheral neuropathy. She admitted that she had experienced "some tingling" in her feet in the past, but she denied that that tingling had ever caused her to fall. Claimant testified that she had never experienced balance **837 or mobility problems because of her obesity. In addition, she reported that she had scored in the "high 90 percent range" in post-injury balance testing and was determined not to be at risk of falling. In her testimony, claimant also mentioned an additional medical condition; she reported that she had broken her ankle decades earlier and had experienced some intermittent weakness and swelling in that ankle.
Claimant submitted a letter opinion and testimony from her primary care physician, Dr. Kelly. Kelly had been claimant's primary care physician for 10 years before her fall. He stated that claimant had no history of problems with balance or mobility and that he had observed her walking without any impaired balance or mobility on numerous occasions. Kelly also stated that, although claimant was taking medication for hypertension *215 that can cause lightheadedness, she had never reported that the medication had caused her to feel lightheaded. Kelly acknowledged that claimant's diabetes, obesity, ankle weakness, and medication had the "potential" to have contributed to her fall. But he emphasized that he had "no way of knowing" either whether they actually contributed to the fall or whether it was "equally possible" that the fall was caused by personal risks as risks associated with employment.
After the hearing, the ALJ issued a written opinion and order, noting that Bell had "only suggested that it was 'possible' for claimant's medical conditions to have contributed to her fall," and that Kelly "had no information from which to conclude" that claimant's medical conditions were "more than potential causes" of her fall. Given that evidence, the ALJ concluded that the possibility that claimant's medical conditions caused her fall was "speculative" and, therefore, claimant had "eliminated idiopathic causes" of her fall. Specifically, the ALJ concluded:
"Since the alleged personal/idiopathic risks offered are speculative, they are less than equally likely to have caused the fall as Claimant's explanation of a tripping incident. I find therefore that Claimant has eliminated idiopathic causes for her fall."
The ALJ then turned to the question of whether claimant had established that her injury occurred "in the course of"
**838 her employment, and concluded that she had not, because she had been on her way to work and employer did not have control over the lobby.[6] Therefore, the ALJ affirmed employer's denial of claimant's claim.
The board also affirmed employer's denial of the claim, but on a different ground. As an initial matter, the board noted that the fall was not the result of an employment risk both because claimant did not argue that an employment risk contributed to her injury and because the board "found no such employment contribution," thus rejecting any suggestion that the 1/16th-inch lip on the lobby tile caused the fall. Catherine A. Sheldon , 66 Van Natta 275, 278 n. 1 (2014).
The board then considered whether claimant's fall was the result of an unexplained accident. The board stated that, to establish that a fall is unexplained, a claimant must " 'persuasively eliminate[ ] all idiopathic factors of causation.' " Id. at 277 (quoting Blank v. US Bank of Oregon , 252 Or. App. 553, 557-58, 287 P.3d 1272 (2012) ). The board also explained that an injury does not arise out of employment if it is " 'equally possible' " that the fall resulted from an idiopathic cause or some other cause. Id. (quoting Blank , 252 Or. App. at 558, 287 P.3d 1272 ).
Applying that standard, the board concluded that claimant failed to establish that her fall was unexplained. The board stated that medical evidence in the record "raised the possibility" that claimant's medical conditions-namely, her obesity, diabetes, ankle weakness, and antihypertensive medication-"caused, or contributed to, claimant's fall." Id. The board relied on the fact that "Kelly unequivocally concluded that those idiopathic factors could not be excluded **839 as a possible cause of claimant's fall. Specifically, he confirmed that those four personal risk factors 'have the potential to have contributed to [claimant's] fall.' " Id. at 277-78. Additionally, the board relied on the fact that Bell "concluded that claimant's medical conditions of severe obesity and diabetes were potential contributing causes of claimant's fall." Id. at 278.
Based on that record, the board stated that "claimant did not persuasively eliminate the possible idiopathic reasons for her fall."
*216 Id. As a result, the board held that claimant failed to prove that her fall was unexplained and, thus, failed to prove that her injury arose out of employment. The board therefore affirmed employer's denial of claimant's workers' compensation claim.
The Court of Appeals reviewed the board's factual findings for substantial evidence, ORS 183.482(8)(c), and its legal conclusions for errors of law, ORS 183.482(8)(a). The court first noted that "[a]n injury that is unexplained and occurs in the course of employment is presumed, as a matter of law, to arise out of the employment." Sheldon , 281 Or. App. at 566, 381 P.3d 1006. The court went on to state that "[w]hether an injury is 'truly unexplained' is a question of fact, and an injury 'will be deemed truly unexplained only if the claimant persuasively eliminate[s] all idiopathic factors of causation.' " Id. (quoting Blank , 252 Or. App. at 557-58, 287 P.3d 1272 ). Thus, the Court of Appeals identified the same general standard that the board purported applying-namely, a standard requiring claimant to eliminate idiopathic factors of causation. But the court stated that the board appeared to misunderstand and misapply that standard. The court noted that the exact contours of that standard have remained obscure because the case law provides "little guidance as to what it means to 'persuasively' eliminate idiopathic factors of causation." Id. at 568, 381 P.3d 1006.
The court attempted to provide that guidance, explaining that, to persuasively eliminate idiopathic factors of causation, "a claimant must establish that idiopathic factors are less than equally likely as work-related factors to have caused the injury." Id. According to the court, that standard "does not mean that a claimant must conclusively disprove any possibility of an idiopathic cause." Id. at 568-69, 381 P.3d 1006 **840 (emphasis in original). That standard, however, does mean that "where the possible explanations for the injury or fall are equally idiopathic and unexplained, the claimant has not sustained the burden of proof." Id. at 569, 381 P.3d 1006 (emphasis in original).
In applying that standard, the Court of Appeals found fault with the board's reasoning:
"The standard applied by the board-reflected in the board's reliance on Kelly's statement that idiopathic factors 'could not be excluded'-effectively required claimant to conclusively rule out all possible idiopathic causes of her injury, no matter how remote, to prove that her injury is compensable. As explained above, such a standard is inconsistent with claimant's burden of persuasion, which requires only that claimant prove that idiopathic factors were less likely to have caused her fall than some other, unexplained factors."
Id.
Because the court concluded that the board applied the wrong legal standard for determining what it means to persuasively eliminate idiopathic factors, the court vacated the board's decision and remanded for reconsideration under the correct legal standard. Id. at 571, 381 P.3d 1006 ; see also SAIF v. Thompson , 360 Or. 155, 165 n. 9, 379 P.3d 494 (2016) ("Ordinarily, if the board applied an incorrect legal standard, the appropriate disposition would be to reverse the board's order and remand the case to the board to apply the correct standard."). Employer petitioned for review of that decision, which this court allowed.
Both the board and the Court of Appeals attempted to apply a standard first used by this court in Livesley . That standard turns on whether the claimant has eliminated idiopathic causes. See Livesley , 296 Or. at 30, 672 P.2d 337 (explaining that a claimant may establish the compensability of an unexplained fall if, among other things, the claimant "can eliminate idiopathic causes" of the fall). Although the Livesley decision does not answer the question presented in this case, that decision nevertheless plays a central role in framing the question presented. We therefore begin by setting out, and attempting to clarify, what the court said and did not say in that decision.
**841 The claimant in Livesley was on the job, walking toward a time clock to punch out, when he fell and broke his hip. Id. at 27, 672 P.2d 337. There was no dispute that the area in which the claimant fell was free from any employment risks-i.e. , work hazards that *217 could have caused him to slip or trip. Id. Although the claimant had a medical history of vertigo, he testified that "he did not get dizzy, experience vertigo, or lose consciousness prior to the fall," and his "doctor discounted any preexisting condition or weakness that could have caused [the] claimant to fall." Id. Based on that record, the board and the Court of Appeals concluded that the claimant's medical condition "was not a factor in [the] claimant's fall." Id. at 27 n. 2, 672 P.2d 337.
Before this court, the employer conceded that the claimant's fall was "not idiopathic in nature." Id. at 27, 672 P.2d 337. Instead, the employer argued to this court only that injuries resulting from unexplained falls are categorically not compensable because they do not arise out of employment. Id. As noted above, an injury arises out of employment if "some causal link exist[s] between the worker's injury and his or her employment," Robinson , 331 Or. at 186, 11 P.3d 1286 (internal quotation marks omitted), and it is the claimant's burden to prove that connection, ORS 656.266(1). The employer had argued in Livesley that, when the cause of a fall is unexplained, the claimant has failed to prove the necessary causal connection between the injury and the employment.
This court disagreed, holding that injuries resulting from unexplained falls may arise out of employment and be compensable. Livesley , 296 Or. at 32, 672 P.2d 337. Among other things, the court described the elimination of idiopathic factors as one of the conditions that a claimant must meet for establishing the compensability of an injury caused by an unexplained fall. Id. at 30, 672 P.2d 337. By imposing a standard that requires the claimant to eliminate idiopathic causes of a fall, the Livesley decision clearly placed the burden of proof on the claimant, which is consistent with the statutory standard. ORS 656.266(1). Thus, an employer does not have the burden to prove that an injury resulted from a personal idiopathic risk. Instead, when attempting to establish that an injury resulted from an unexplained neutral risk, it is the **842 claimant's burden to prove that the injury did not result from a personal idiopathic risk.
The Livesley decision also clearly announced the standard for determining when an unexplained fall is compensable, which is separate from the standard for determining when a fall is unexplained. As noted above, the parties in Livesley agreed that the claimant's fall was unexplained and that he had eliminated idiopathic causes of the fall. 296 Or. at 27, 672 P.2d 337. The question presented in Livesley therefore was not whether the claimant's injury was unexplained or whether the claimant had eliminated idiopathic causes of his fall. Instead, the question was, assuming that a claimant's injury was unexplained and that he or she had eliminated idiopathic causes of his fall, what else must a claimant prove for such an injury to be compensable.
As to that question, the court referred back to the unitary work-connectedness test, noting that a claimant must prove that the "in the course of" employment prong and the "arising out of" employment prong have a sufficient combined weight to justify compensation. Id. at 28, 672 P.2d 337 (citing Arthur Larson, 1A Workmen's Compensation Law § 29.10 (1978)); see also Panpat , 334 Or. at 349, 49 P.3d 773 ("If one element is met easily, then the other element must be met at least minimally.").
The court then reasoned that because an unexplained fall only minimally satisfies the "arising out of employment" prong, a claimant attempting to establish the compensability of an unexplained fall must more substantially satisfy the "course of employment" prong. And the court determined that the claimant in that case had met that burden. According to the court, the " 'course of employment' elements [were] strong," Livesley , 296 Or. at 32, 672 P.2d 337, because the claimant's fall occurred "on the employer's premises, during working hours, [and] while [he was] performing required duties," id. at 30, 672 P.2d 337. See also id. at 32, 672 P.2d 337 (allowing compensation for an injury resulting from an unexplained fall because "the 'course of employment' test is so fully met").[7]
*218 **843 Other parts of the Livesley decision, however, are less clear. For example, the court appears to put forward two incompatible justifications for its conclusion that unexplained falls may be deemed to have even minimally arisen out of employment. On the one hand, the decision appears to endorse the positional-risk doctrine for neutral risks, which includes unexplained falls. The positional-risk doctrine, according to a leading treatise, states that an injury resulting from a neutral risk is deemed to arise out of employment " 'if the conditions of employment put claimant in a position to be injured.' " Id. at 30, 672 P.2d 337 (quoting Arthur Larson, 1A Workmen's Compensation Law § 7.00, 3-11 (1978)).[8] Under the positional-risk doctrine, the causal connection between the injury and the employment is established because, but for the claimant's employment, the claimant would not have encountered that neutral risk.
On the other hand, the Livesley decision appears to reason that unexplained falls may be deemed to arise out of employment because, when the cause of the fall is unknown, the fall might have been caused by an employment risk, rather than a neutral risk. The court described employment risks as the "ordinary risk[s] of employment," and stated that "where idiopathic causes for an unexplained fall have been eliminated, the inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employment premises exposed the employee." Id. at 32, 672 P.2d 337.
At any given time, an employment environment might expose an employee to both employment risks and neutral risks. But if "ordinary risk" refers to employment risk, rather than neutral risk, then that sentence in Livesley could be read as suggesting that injuries resulting from unexplained falls arise out of employment based on an inference **844 that some employment risk caused the injury. By treating an unexplained fall as being caused by an employment risk, that reasoning breaks down the distinction between employment risks and neutral risks, because unexplained falls are supposed to be treated as neutral risks. That reasoning is also inconsistent with the positional-risk doctrine. Under the positional-risk doctrine, there is no need for an inference that a neutral risk might have been an employment risk because the necessary causal connection is established by the fact that the claimant's employment put the claimant in a position to be injured by the neutral risk, regardless of whether that risk was distinctly associated with the employment.[9]
Any confusion within Livesley has been resolved by later decisions. Those decisions uniformly cite Livesley for its endorsement of the positional-risk doctrine and not for its suggestion that injuries resulting from neutral risks can be deemed to arise out of employment based on an inference that those injuries actually result from an employment risk. See Panpat , 334 Or. at 350, 49 P.3d 773 ("[N]eutral risks are compensable 'if the conditions of employment put claimant in a position to be injured.' " (Quoting Livesley , 296 Or. at 29-30, 672 P.2d 337 )); Redman Industries , 326 Or. at 36, 943 P.2d 208 (relying on Livesley for its endorsement of the positional-risk doctrine). We therefore continue that line of cases and apply the positional-risk doctrine to determine whether injuries resulting from neutral risks may be deemed to arise out of employment. The positional-risk doctrine establishes the standard of proof *219 that a claimant must satisfy to prove that injuries resulting from an unexplained fall arose out of employment. As described above, a claimant may satisfy the positional-risk doctrine by proving that a fall is unexplained and that it occurred in the course of employment. Thus, a finding by the board that a fall is unexplained and that it occurred in the course of employment is a finding that a claimant has proved that an injury arose out of employment. In the same way, a finding by the board that a fall resulted from an employment risk is also a finding that a claimant has proved that an injury arose out **845 of employment, and a finding by the board that a fall resulted solely from a personal risk is a finding that a claimant has failed to prove that an injury arose out of employment.
In this case, however, the parties disagree about a threshold question that was not disputed in Livesley -namely, whether claimant's fall is unexplained and whether claimant has eliminated the idiopathic causes of her fall. And much of the parties' disagreement turns on attempting to understand what the Livesley court meant by the phrase "eliminate idiopathic causes." Id. at 30, 672 P.2d 337.
The parties' arguments on this point are difficult to decipher. It appears as though employer agrees with the version of the standard that the board applied, while claimant agrees with the version of the standard that the Court of Appeals applied. For the purpose of assessing standards, there are two separate issues: (1) which idiopathic causes does a claimant need to eliminate; and (2) what does it mean to eliminate those idiopathic causes.
As to the first issue, the phrase "eliminate idiopathic causes" raises the question of whether a claimant must eliminate all theoretically possible idiopathic causes or some smaller subset of idiopathic causes. In this case, the Court of Appeals was concerned that the board required claimant to eliminate all theoretically possible idiopathic causes. Sheldon , 281 Or. App. at 568-69, 381 P.3d 1006 (explaining that the standard "does not mean that a claimant must conclusively disprove any possibility of an idiopathic cause" (emphasis in original)).
We agree with the Court of Appeals that a claimant need not eliminate all theoretically possible idiopathic causes. There is almost always going to be some theoretically possible explanation that cannot be disproven. So, if a factfinder were required to consider all theoretically possible explanations for an injury, then a factfinder would likely never conclude that an accident is unexplained. If a factfinder would likely never conclude that an accident is unexplained, then unexplained accidents would be, in effect, non-compensable. Such an approach is at odds with this court's decision in Livesley , which recognized the compensability of unexplained accidents.
**846 Despite its criticism of the board's order, the Court of Appeals did not attempt to identify some subset of idiopathic causes that a claimant is required to eliminate. Instead, the Court of Appeals addressed the second issue identified above-namely, what it means to eliminate those idiopathic causes that the claimant is required to eliminate. As to that issue, the Court of Appeals concluded that, for a claimant to eliminate idiopathic causes, the claimant must "prove that idiopathic factors were less likely to have caused her fall than some other, unexplained factors." Sheldon , 281 Or. App. at 569, 381 P.3d 1006. Similarly, the court stated, "In the context of an unexplained fall, that means that a claimant must establish that idiopathic factors are less than equally likely as work-related factors to have caused the injury." Id. at 568, 381 P.3d 1006.
That standard appears to be based on this court's statement in Livesley that injuries resulting from a fall are not compensable "where it is equally possible that its cause was idiopathic or work-related." 296 Or. at 30, 672 P.2d 337. That statement makes sense when comparing identifiable idiopathic risk factors and identifiable employment risk factors or even identifiable neutral risk factors. Under those circumstances, one explanation can be weighed against the other. That is consistent with how we usually think about proving what caused an event. We often think about proof, in that context, as *220 establishing that one explanation for the event is more likely than another explanation or that one explanation is the likeliest explanation.
But determining whether an event is explained or unexplained presents a different calculus. The very idea of proving that an event is unexplained is an awkward one. When an event is unexplained, it is because there is an absence of evidence supporting any explanation. Thus, because an unexplained fall is supported by an absence of evidence, there is no evidence to weigh against the evidence supporting an idiopathic explanation for a fall. In other words, determining the likelihood that a particular risk caused a particular event requires knowing something about the likelihood that the event could have been caused by some other risk. But when those other risks are unknown, there is no way to measure the likelihood of those risks exactly.
**847 In light of those considerations, we can construct a broader framework within which to understand both which idiopathic causes need to be eliminated and what it means to eliminate those idiopathic causes. Determining whether a fall is explained or unexplained is not a matter of determining which explanation is the best explanation or even which explanation is the likeliest explanation. Instead, determining whether a fall is explained or unexplained is a matter of determining whether there are any nonspeculative explanations. If there is a nonspeculative explanation, then that explanation prevents the claimant from establishing that the fall is unexplained. If there is no nonspeculative explanation available, then the fall is unexplained. Therefore, to prove that a fall is unexplained, the claimant must prove that there is no nonspeculative explanation for the fall.
Within that framework, the phrase "eliminate idiopathic causes" has a more concrete meaning that is consistent with its use in Livesley . Ultimately, to establish an unexplained fall, a claimant must prove that there are no nonspeculative explanations for a fall. Eliminating idiopathic causes is an intermediate step that arises only when the record reveals facially nonspeculative idiopathic explanations for a fall. If there are no facially nonspeculative idiopathic causes for explaining a fall, then there are no idiopathic causes for a claimant to eliminate. But if there are some facially nonspeculative idiopathic causes for explaining a fall, then the claimant must offer countering evidence sufficient to convince the board that the proposed idiopathic cause is, in fact, speculative.[10]
Thus, to address the two issues identified above, a claimant is required to eliminate facially nonspeculative idiopathic explanations for a fall. And a claimant eliminates those idiopathic explanations by providing sufficient countering evidence to demonstrate that those idiopathic explanations are speculative in light of all admissible evidence.
**848 That is what happened in Livesley . The record in that case revealed that the claimant suffered from vertigo. To the extent that the claimant's vertigo established a facially nonspeculative idiopathic explanation for the fall, both the board and the Court of Appeals concluded that the claimant satisfactorily countered that evidence with his own testimony that he did not experience any symptoms of vertigo immediately before his fall and with his physician's testimony "discount[ing] any pre-existing condition or weakness that could have caused [the] claimant to fall." Livesley , 296 Or. at 27, 672 P.2d 337. Relying on "the medical reports and lay testimony," the board and the Court of Appeals concluded that the claimant "persuasively eliminated all idiopathic factors of causation." Id. at 30, 672 P.2d 337.[11]
*221 In sum, to determine that a fall is unexplained, the board must find that there is no nonspeculative explanation for the fall. Based on the record before us, it appears that the board did not apply that legal standard, which is needed to determine whether claimant's injury arose out of her employment. As a result, the board failed to properly determine whether claimant's injury is compensable, which requires both that the injury arose out of employment and that it occurred in the course of employment. We therefore vacate the board's order and remand to determine whether claimant's injury is compensable. That conclusion is consistent with the result reached by the Court of Appeals. Sheldon , 281 Or. App. at 571, 381 P.3d 1006.
The decision of the Court of Appeals is affirmed. The decision of the board is vacated, and the case is remanded to the board for reconsideration.

In this context, the word "idiopathic" "refers to an employee's preexisting physical weakness or disease which contributes to the accident." Phil A. Livesley Co. v. Russ , 296 Or. 25, 27 n. 1, 672 P.2d 337 (1983).

This court has not had the opportunity to consider the extent to which an injury may be compensable if it results from a combination of those risks-i.e. , a mixed-risk case. See Hamilton v. SAIF , 256 Or. App. 256, 260, 302 P.3d 1184 (2013), rev. den. , 354 Or. 148, 311 P.3d 525 (2013) (noting the lack of "appellate cases in Oregon announcing or applying the mixed-risk doctrine"). But the board has treated injuries resulting from a combination of employment and personal risks as arising out of employment. See, e.g. , Janet G. Cavalliere , 66 Van Natta 228, 234 (2014) (recognizing the compensability of mixed-risk injuries); see also Arthur Larson & Lex K. Larson, 1 Larson's Workers' Compensation Law § 4.04, 4-3 (2017) (same).

This court has said that other examples of neutral risks "include an employee being hit by a stray bullet, bitten by a dog, struck by lightning, or injured by debris from a distant explosion." Redman Industries, 326 Or. at 37 n. 1, 943 P.2d 208.

See also 1 Larson's Workers' Compensation Law § 7.04[1][a] at 7-25 ("[I]t is significant to note that most courts confronted with the unexplained-fall problem have seen fit to award compensation.").

It is unclear both what "risks associated with employment" Bell was considering and what her qualifications were to assess the likelihood that those employment risks might have caused claimant's fall. Determining that medical conditions pose a risk of falling is not the same as determining what caused a particular claimant to fall at a particular time.

As a general rule, injuries sustained when a worker is traveling to or from do not occur "in the course of" employment. Fred Meyer , 325 Or. at 597, 943 P.2d 197. However, there are exceptions to that "going and coming" rule, including an exception for injuries sustained on the employer's premises. Id. at 597-98, 943 P.2d 197. That exception is known as the "parking lot" exception. Id . at 597, 943 P.2d 197. In this case, the ALJ found that claimant fell on her way to work and that employer did not have control over the area where she fell because the employer's landlord was responsible for the maintenance of the building's common areas, including the lobby. Based on those findings, the ALJ concluded that claimant's injuries did not occur "in the course of" her employment because she was subject to the "going and coming" rule and did not come within the "parking lot" exception to that rule.

As a result, under Livesley , a claimant cannot prove that an injury is compensable merely by disproving other possible explanations. We therefore reject employer's argument that the legislature overturned Livesley when, in 1987, it enacted the statute providing a claimant's burden of proof, which states, in part, that "[t]he worker cannot carry the burden of proving that an injury or occupational disease is compensable merely by disproving other possible explanations of how the injury or disease occurred." ORS 656.266(1). See also Tape Recording, Senate Labor Committee, HB 2271, April 23, 1987, Tape 120, Side A (testimony of Rep Bob Shiprack) ("Section 2 of the bill is not intended to overturn any cases. What we're doing here is codifying what is actually the current practice in workers' compensation.").

The current version of that treatise describes the positional-risk doctrine at 1 Larson's Workers' Compensation Law § 3.05 at 3-7.

"[A] lot of confusion, circumlocutions, and fictions could be avoided in the unexplained-fall cases by merely accepting the proposition that what is unexplained is neutral." 1 Larson's Workers' Compensation Law § 7.04[1][c] at 7-34.

In practice, that frequently means that the employer must offer some evidence establishing that there is a nonspeculative idiopathic explanation for a fall. That does not conflict with ORS 656.266(1), which imposes on the claimant the burden of establishing compensability of an injury. The employer is not required to prove that the idiopathic factor caused the fall. At most, the employer is required to establish that the idiopathic explanation being offered is nonspeculative.

We offer that example only to demonstrate the mechanics of proving that a fall is unexplained and to provide context understanding what it means to eliminate idiopathic causes of a fall. As noted, this court was not asked to review the factual determinations in Livesley , because the employer conceded that the claimant's fall was not caused by idiopathic factors. Id.